**John C. MUSE, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. C-92-G-68.**

United States District Court
M. D. North Carolina,
Greensboro Division.

Aug. 22, 1969.

Robert L. Gavin, of Gavin, Jackson & Gavin, Sanford, N. C., for plaintiff.

Johnnie M. Walters, Asst. Atty. Gen., and Myron C. Baum and G. Thaddeus Williams, Attys., Dept. of Justice, Washington, D. C., and William L. Osteen, U. S. Atty., Greensboro, N. C., for defendant.

MEMORANDUM OPINION

EDWIN M. STANLEY, Chief Judge.

This is an action to recover federal income taxes and interest in the amount of $19,007.53 paid by the plaintiff for the years 1960 through 1965, plus statutory interest, which is alleged to have been erroneously and illegally assessed and collected.

The case was tried before the Court without a jury. The evidence consists of stipulated facts and documents, which may be briefly summarized:

Plaintiff is a citizen and resident of the State of North Carolina, and in conformity with the Internal Revenue Code of 1954, duly filed his personal income tax returns on or before the succeeding April 15 of each of the taxable years 1960 through 1965. The tax shown to be due on each of said returns, determined by the use of the tax rate tables for the head of a household which are set forth in Section 1(b) of the Internal Revenue Code of 1954, was as follows:

| 1960 | $17,353.30 |
| 1961 | 21,063.94 |
| 1962 | 20,452.00 |
| 1963 | 20,846.07 |
| 1964 | 21,032.94 |
| 1965 | 14,458.40 |

Upon audit by the District Director of Internal Revenue, it was determined that the plaintiff did not qualify for the head of household rates. As a consequence, the following additional assessments and payments were made:

| Tax Year | Assessment Date | Tax Assessed | Interest Assessed | Total Assessment | Date Paid |
| --- | --- | --- | --- | --- | --- |
| 1960 | 5/28/65 | $2,628.79 | $649.67 | $3,278.46 | 6/4/65 |
| 1961 | 5/28/65 | 3,016.17 | 563.43 | 3,579.60 | 6/4/65 |
| 1962 | 6/9/65 | 2,990.76 | 386.15 | 3,376.91 | 6/15/65 |
| 1963 | 1/6/67 | 3,013.04 | 474.55 | 3,487.59 | 11/30/66 |
| 1964 | 1/6/67 | 2,767.38 | 269.82 | 3,037.20 | 11/30/66 |
| 1965 | 1/6/67 | 2,166.53 | 81.24 | 2,247.77 | 11/30/66 |

On May 29, 1967, claims for refund for the years involved were filed with the District Director of Internal Revenue, Greensboro, North Carolina, and formal notices of claim disallowance were forwarded to the plaintiff on July 15, 1968. This action was timely filed on June 21, 1968, and plaintiff has complied with all administrative procedures requisite to filing a refund suit.

The plaintiff was born in the village of Cameron, Moore County, North Carolina, and, at all times pertinent, the home place in Cameron was owned by plaintiff's three elderly sisters. It is the sisters' principal place of abode, but it had been financially maintained by the plaintiff since 1955. For purposes of the Internal Revenue laws, two of the sisters are dependents of plaintiff, and were allowed as dependents during the years 1960 through 1965.

From 1916 to 1924, plaintiff was temporarily away from the Cameron home attending school and working part time. From August, 1924, to September, 1925, he lived in Cameron, where he taught school and worked with the railroad. In September of 1925, plaintiff left Cameron, and assumed the duties of a full-time instructor at the University of South Carolina, and continued this work until May of 1926. During the summer months of 1926 he was employed temporarily by a real estate firm in Asheville, North Carolina. From September of 1926 until January of 1927, he resided at the Cameron home place. In January of 1927, plaintiff was employed by an accounting firm in Greensboro, North Carolina, and continued this employment until April of 1928 when he opened his own accounting practice in Durham, North Carolina.

On January 2, 1929, plaintiff opened an accounting practice in Sanford, North Carolina, which is located approximately twelve miles from Cameron, and this accounting practice has been maintained continuously since 1929.

Plaintiff was married and lived with his wife from sometime during 1949 until some date in 1950. Because of marital separation, he moved all of his furniture to Cameron to be stored. In 1953, plaintiff moved his furniture from Cameron to furnish an apartment he owned in Sanford. He also secured additional furniture and furnished a bedroom at the Cameron home. Personal property, such as fishing rods and tackles, guns, an outboard motor, books, and hunting and farming clothes are kept at the Cameron home. Plaintiff has dinner with his sisters at their home in Cameron practically every Sunday. He also sees the sisters during the week, and has a key to the house.

Prior to 1953, except during the years 1949 and 1950 when he was married, plaintiff lived in a hotel in Sanford. In 1953, as earlier noted, he moved into an apartment he owned in Sanford because he wanted more space. He lived in the apartment during all the years in suit, and continues to live there at the present time. The apartment has two bedrooms, a combination kitchen-dinette, and a living room. Plaintiff does not cook in the apartment, but has his meals with a neighbor.

Rather than to drive the distance from Cameron to Sanford daily, plaintiff has maintained, and continues to maintain, the Sanford apartment. Additionally, plaintiff's decision to maintain his place of residence in Sanford was based upon business reasons. During the early years of his practice, many clients telephoned him at night. It was not until recently that Cameron acquired telephone service, and the telephones are all party lines. Many corporations which plaintiff did work for held stockholders' meetings at night, and it was necessary for plaintiff to attend. However, he has not been involved in matters requiring nighttime contacts with his clients during the past six to eight years since his work has been limited to estate and income tax matters.

Even though the business necessity to live in Sanford ceased to exist several years ago, plaintiff continues to maintain his Sanford apartment. Since 1963, he has had some health problems symptomized by diarrhea, and this, too, is a reason for maintaining the Sanford apartment. The Cameron home does not have a bathroom upstairs where plaintiff would normally sleep, and there are no plans to install another bath. Since 1963, plaintiff has not spent a night in the Cameron home. He has, however, spent many nights in a lodge located on one of his farms in the Cameron vicinity. The lodge has three bedrooms, a floor furnace, hot and cold water, and an electric stove. Plaintiff has no retirement plans, but continues to maintain farms near Cameron in anticipation of spending more time there and less time in Sanford.

Plaintiff is a member of the Cameron Methodist Church. He has not moved his membership because he is in Cameron more often on Sunday than anywhere else. However, he has never attended church regularly, perhaps on an average of six times a year. Plaintiff considered himself a resident of Sanford during the period 1938 through 1957 because he voted there. He has voted in Cameron since 1957. Other than voting and his financial contributions to the Cameron household, there are no presently existing conditions that did not exist during the period 1938–1957.

During the years in suit, plaintiff paid from 80 to 90% of the household expenses at the Cameron home, as well as other expenses in support of his two dependent sisters. A third sister living at the home, who is not dependent upon plaintiff, only pays the telephone, electric and fuel oil bills. Plaintiff owns a total of three farms in the vicinity of Cameron and actively supervises the farms.

The sole question for decision is whether, under the stated facts, plaintiff was the head of a household, as defined in § 1(b) (2) (A) (i) et seq. of the Internal Revenue Code of 1954, during the years 1960 through 1965.

The statute reads as follows:

"§ 1.  TAX IMPOSED

\*    \*    \*    \*    \*    \*

"(b) *Rates of tax on heads of households*

\*    \*    \*    \*    \*    \*

"(2) *Definition of head of household.*—For purposes of this subtitle, an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year, is not a surviving spouse (as defined in section 2(b)), and either—

"(A) maintains as his home a household which constitutes for such taxable year the principal place of abode, as a member of such household, of—

"(i) a son, stepson, daughter, or stepdaughter of the taxpayer, or a descendant of a son or daughter of the taxpayer, but if such son, stepson, daughter, stepdaughter, or descendant is married at the close of the taxpayer's taxable year, only if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or

"(ii) any other person who is a dependent of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or

"(B) maintains a household which constitutes for such taxable year the principal place of abode of the father or mother of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such father or mother under section 151.

"For purposes of this paragraph and of section 2(b) (1) (B), an individual shall be considered as maintaining a household only if over half of the cost of maintaining the household during the taxable year is furnished by such individual."

Under §§ 151 and 152 of the Internal Revenue Code of 1954, the term "dependent" is defined to include a brother or sister, over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer.

With considerable force and logic the defendant argues that an individual cannot qualify as head of a household under § 1(b) (2) (A) unless he maintains as his *own* home the household in which his dependents reside. This is true, defendant argues, since § 1(b) (2) (A) states that an individual may qualify as head of a household if he *"maintains as his home a household"* which constitutes the principal place of abode of certain dependents, one of whom may be a sister, while § 1(b) (2) (B), by contrast, provides that a person may qualify as head of a household if he *"maintains a household* which constitutes for such taxable year the principal place of abode of the father or mother of the taxpayer."* (Emphasis supplied.)  The different requirements of § 1(b) (2) (A) and § 1(b) (2) (B), the defendant contends, is a clear indication that Congress intended to place different requirements for qualification as the head of a household when sisters, rather than parents, are the qualifying dependents.  In the case of a sister, it is argued, the statute imposes the requirement that the taxpayer maintain the household as his *own* home, while in the case of parents the statute only requires the taxpayer to maintain a household which constitutes the principal place of abode of *his mother or father.*

Since it is a statutory mandate that the taxpayer must maintain "as his home" the same household as his dependent sisters, it is defendant's contention that plaintiff must establish that his sisters' household, located in Cameron, North Carolina, was his home during the years in suit.  In support of its interpretation of the statute, defendant refers to § 1.1–2(c) (1), Treasury Regu-

lations on Income Tax (1954 Code), which provides, in substance, that in order for a taxpayer to be considered head of a household under § 1(b) (2) (A), the household must actually constitute the home of the taxpayer for his taxable year, and that it is not sufficient that the taxpayer maintain the household without being its occupant.

If defendant's interpretation of the statute is correct, the facts clearly establish that the plaintiff did not live with his sisters in Cameron, but maintained his home in Sanford, North Carolina. When not away from his home on business, plaintiff had his meals and spent his nights in Sanford. His accounting firm was located in Sanford, he banked there, and received his mail there. Plaintiff's relationship to the Cameron household has been limited to having Sunday dinner with his sisters, and going to see them during the week when in Cameron on business.

The case of Smith v. C. I. R., 9 Cir., 332 F.2d 671 (1964), however, construes § 1(b) (2) (A) differently from that urged by the defendant. There the taxpayer maintained two homes, one in Nevada and one in California, and paid more than one-half of the expenses of each home. The taxpayer was not married and was not a surviving spouse. The home in California was maintained for taxpayer's adopted son who lived in it and used it as *his* principal place of abode. Taxpayer's principal place of abode and domicile was in Nevada. During the three years in suit, taxpayer, when not traveling, spent about 60% of her time in Nevada and about 40% in California. The commissioner urged that the taxpayer could have only one home within the meaning of the statute, and that the term "home" was intended to be descriptive of a person's relationship to a dwelling as his fixed place of abode where he permanently resides and to which he always intends to return when away from it. In rejecting this argument, the court stated, at page 673:

"A person can have but one domicile, but we see no reason why a person cannot have two homes. The statute requires that the *dependent* must be a member of a household which constitutes for such taxable year the principal place of abode of such dependent child or parent. But the language of the statute does *not* require that the *taxpayer* maintain the household for which he claims a deduction as *his* principal place of abode. It would have been simple for the Congress to have included that qualification had they wanted it. Nor do we read the legislative history or case authority as requiring the taxpayer to have but one home.

"When the regulations adopted by the Treasury state: 'The taxpayer and such other person must occupy the household for the entire taxable year of the taxpayer,' they go beyond the statute, if, by the verb 'occupy,' they require a physical personal occupancy. If they require but a token or implied occupancy, then under the facts of this case that token or implied occupancy has existed.

"The Commissioner may not prescribe any regulations which are not consistent with the statute; or which may add a restriction to the statute which is not there. United States v. Marett, 5 Cir., 1963, 325 F.2d 28, Coady v. Commissioner, 33 T.C. 771, 779, affirmed 289 F.2d 490 (6 Cir. 1961). He may not impose a tax by regulation. C. I. R. v. Acker, 1959, 361 U.S. 87, 92, 80 S.Ct. 144, 4 L.Ed. 2d 127."

It is conceded that two of plaintiff's sisters living in the Cameron household were his dependents, and that plaintiff contributed in excess of 50% of their support. Since a "token or implied occupancy," as contrasted to a "physical personal occupancy" is all that is required by the statute, and any additional requirement imposed by the regulations go beyond the statute, it is abundantly clear that plaintiff qualified as head of the household under § 1(b) (2) (A) during the years in suit. Unquestionably, plaintiff has at all times considered the

Cameron home place as *one* of his homes. While it is true that he spent the night there on infrequent occasions, he has maintained many personal belongings and a furnished bedroom in the home. Moreover, since 1957, he has voted in Cameron rather than Sanford, and has maintained his membership in the Cameron Methodist Church.

It is concluded that during the taxable years 1960 through 1965, the years in suit, plaintiff met all the requirements necessary to be considered head of a household within the meaning of § 1(b) (2) (A), and is thus entitled to the tax rates prescribed by § 1(b). Since there is no question as to the amount involved, the plaintiff is entitled to recover the amount prayed for in his complaint.

A judgment will be entered accordingly.