John C. MUSE, Appellee,

v.

UNITED STATES of America, Appellant.

No. 14325.

United States Court of Appeals, Fourth Circuit.

Nov. 13, 1970.

Gary R. Allen, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson and Elmer J. Kelsey, Attys., Washington, D. C., on the brief) for appellant.

Robert L. Gavin, Sanford, N. C., for appellee.

Before BOREMAN and BUTZNER, Circuit Judges, and THOMSEN, District Judge.

THOMSEN, District Judge:

The government's appeal from a judgment for the taxpayer in an action for recovery of income taxes assessed and paid raises the question whether the taxpayer qualified during the tax years in question (1960–1965) for the "Heads of Households" income tax rates under § 1(b) (2) (A) of the 1954 Code. That section provides that

"(2) *Definition of head of household.* * * * an individual shall be considered a head of a household if, and only if, such individual * * * either—

"(A) maintains as his home a household which constitutes for such taxable year . the principal place of abode, as a member of such household, of—

" * * * [a] person who is a dependent of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or

"(B) maintains a household which constitutes for such taxable year the principal place of abode of the father or mother of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such father or mother under section 151."

The applicable regulation, Treasury Regulations on Income Tax, 1954 Code, 26 C.F.R., § 1.1–2 is set out in the margin.[1]

---

1. "§ 1.1–2 *Rates of tax on heads of households.*
" * * *
"(c) Household. (1) In order for the taxpayer to be considered a head of a household by reason of any individual described in subparagraph (A) of section 1(b) (2), the household must actually constitute the home of the taxpayer for his taxable year. A physical change in the location of such home will not prevent a taxpayer from qualifying as a head of a household. Such home must also constitute the principal place of abode of at least one of the persons specified in such subparagraph (A). It is not sufficient that the taxpayer maintain the household without being its occupant. The taxpayer and such other person must occupy the household for the entire taxable year of the taxpayer. However, the fact that such other person is born or dies within the taxable year will not prevent the taxpayer from qualifying as a head of household if the household constitutes the principal place of abode of such other person for the remaining or preceding part of such taxable year. The taxpayer and such other person will be considered as occupying the household for such entire taxable year notwithstanding temporary absences from the household due to special circumstances. A nonpermanent failure to occupy the common abode by reason of illness, education, business, vacation, military service, or a custody agreement under which a child or stepchild is absent for less than six months in the taxable year of the taxpayer, shall be considered temporary absence due to special circumstances. Such absence will not prevent the taxpayer from qualifying as the head of a household if (i) it is reasonable to assume that the taxpayer or such other person will return to the household, and (ii) the taxpayer continues to maintain such household or a substantially equivalent household in anticipation of such return. * * * * "

We accept the findings of fact made by the district judge, 303 F.Supp. 172, at 173–174:

"The plaintiff was born in the village of Cameron, Moore County, North Carolina, and, at all times pertinent, the home place in Cameron was owned by plaintiff's three elderly sisters. It is the sisters' principal place of abode, but it had been financially maintained by the plaintiff since 1955. For purposes of the Internal Revenue laws, two of the sisters are dependents of plaintiff, and were allowed as dependents during the years 1960 through 1965.

" * * * On January 2, 1929, plaintiff opened an accounting practice in Sanford, North Carolina, which is located approximately twelve miles from Cameron, and this accounting practice has been maintained continuously since 1929.

"Plaintiff was married and lived with his wife from sometime during 1949 until some date in 1950. Because of marital separation, he moved all of his furniture to Cameron to be stored. In 1953, plaintiff moved his furniture from Cameron to furnish an apartment he owned in Sanford. He also secured additional furniture and furnished a bedroom at the Cameron home. Personal property, such as fishing rods and tackles, guns, an outboard motor, books, and hunting and farming clothes are kept at the Cameron home. Plaintiff has dinner with his sisters at their home in Cameron practically every Sunday. He also sees the sisters during the week, and has a key to the house.

"Prior to 1953, except during the years 1949 and 1950 when he was married, plaintiff lived in a hotel in Sanford. In 1953, as earlier noted, he moved into an apartment he owned in Sanford because he wanted more space. He lived in the apartment during all the years in suit, and continues to live there at the present time. The apartment has two bedrooms, a combination kitchen-dinette, and a living room. Plaintiff does not cook in the apartment, but has his meals with a neighbor.

"Rather than to drive the distance from Cameron to Sanford daily, plaintiff has maintained, and continues to maintain, the Sanford apartment. Additionally, plaintiff's decision to maintain his place of residence in Sanford was based upon business reasons. * * *

"Even though the business necessity to live in Sanford ceased to exist several years ago, plaintiff continues to maintain his Sanford apartment. Since 1963, he has had some health problems * * *, and this, too, is a reason for maintaining the Sanford apartment. The Cameron home does not have a bathroom upstairs where plaintiff would normally sleep, and there are no plans to install another bath. Since 1963, plaintiff has not spent a night in the Cameron home. He has, however, spent many nights in a lodge located on one of his farms in the Cameron vicinity. The lodge has three bedrooms, a floor furnace, hot and cold water, and an electric stove. Plaintiff has no retirement plans, but continues to maintain farms near Cameron in anticipation of spending more time there and less time in Sanford.

"Plaintiff is a member of the Cameron Methodist Church. He has not moved his membership because he is in Cameron more often on Sunday than anywhere else. However, he has never attended church regularly, perhaps on an average of six times a year. Plaintiff considered himself a resident of Sanford during the period 1938 through 1957 because he voted there. He has voted in Cameron since 1957. Other than voting and his financial contributions to the Cameron household, there are no presently existing conditions that did not exist during the period 1938–1957.

"During the years in suit, plaintiff paid from 80 to 90% of the household expenses at the Cameron home, as well as other expenses in support of his

**352**

two dependent sisters. A third sister living at the home, who is not dependent upon plaintiff, only pays the telephone, electric and fuel bills. Plaintiff owns a total of three farms in the vicinity of Cameron and actively supervises the farms."

The government argued in the district court, and argues here, that a taxpayer cannot qualify as "head of a household" under § 1(b) (2) (A), quoted above, unless he maintains as his own home the household in which his dependents—in this case his sisters—reside.[2] The district court recognized that if the government's "interpretation of the statute is correct, the facts clearly establish that the plaintiff did not live with his sisters in Cameron, but maintained his home in Sanford, North Carolina. * * * Plaintiff's relationship to the Cameron household has been limited to having Sunday dinner with his sisters, and going to see them during the week when in Cameron on business".

Nevertheless, relying on Smith v. Commissioner of Internal Revenue, 332 F.2d 671 (9 Cir. 1964), the district judge held that a "token or implied occupancy", as contrasted to a "physical personal occupancy" is all that is required by the statute; that "the plaintiff has at all times considered the Cameron home place as one of his homes", and therefore that during the taxable years 1960 through 1965 plaintiff met all the requirements necessary to be considered head of a household within the meaning of § 1(b) (2) (A). We cannot agree.

The word "home" has several dictionary meanings, some based on objective considerations, some subjective.[3] Accordingly, we look to the legislative history of § 1(b) (2). The House Ways and Means Committee and the Senate Finance Committee, in their reports accompanying the "head of household" provisions as originally proposed and adopted,[4] stated:

"A taxpayer will not be considered as the head of a household unless such household actually constitutes his home for the taxable year * * *. Section 12(c) [of the Internal Revenue Code of 1939, as proposed to be so added] is intended to apply only where the taxpayer and such other members of the household live together in such household during the entire taxable year (except for temporary absences due to special circumstances). * * * It is also intended that the household constitute the actual place of abode of the taxpayer and it is not sufficient that the taxpayer maintain the household without being an occupant thereof."

Congress considered the question again in 1954, when the House proposed a "head of family" provision specifically intended to eliminate the joint residence requirement in the "head of household" provisions as originally adopted.[5] The Senate, however, refused to go along with the liberalization of the joint residence requirement except insofar as it applied to taxpayers who maintain households for their parents.[6] The re-

2. By contrast, § 1(b) (2) (B) provides that a taxpayer may qualify as "head of a household" if he "maintains a household which constitutes for such taxable year the principal place of abode of the father or mother of the taxpayer."

3. See Webster's Third New International Dictionary (1967), Webster's Second (1959), The Random House Dictionary of the English Language (1966), and The American Heritage Dictionary of the English Language (1969).

4. H.Rep. No. 586, 82d Cong., 1st Sess., p. 106 (1951–2 Cum.Bull., p. 434); and S.Rep. No. 781, Part 2, 82d Cong., 1st Sess., p. 14 (1951–2 Cum.Bull. 545, 554).

5. See H.Rep. No. 1337, 83d Cong., 2d Sess., pp. 4–5 (3 U.S.C.Cong. & Adm. News (1954) 4017, 4029). Treasury Regulations substantially similar to the present § 1.1–2(c) (1) requiring joint occupancy had been adoptd in February, 1953. T.D. 5993, 1953–1 Cum.Bull. 9, 13.

6. See S.Rep. No. 1622, 83d Cong., 2d Sess., pp. 4–5 (3 U.S.C.Cong. & Adm.News (1954) 4621, 4633–4634) and H.Conf. Rep. No. 2543, 83d Cong., 2d Sess., pp. 21–22 (3 U.S.C.Cong. & Adm.News (1954) 5280–5281).

sult was § 1(b) (2) (A) and (B), as quoted above. For a fuller discussion of the legislative history, see Grace v. Commissioner of Internal Revenue, 51 T.C. 685, aff'd 421 F.2d 165 (5 Cir. 1969).

The authorities, including appellate opinions after the decision in the district court in this case, support the conclusion that in order to qualify under § 1(b) (2) (A), the taxpayer must actually live in the qualifying household a substantial part of the time. "Ownership and maintenance is not per se sufficient; there must be physical occupancy by the taxpayer to meet the requirement of a 'home'." Grace v. Commissioner of Internal Revenue, *supra*; Biolchin v. Commissioner of Internal Revenue, Tax Court memorandum opinion, Docket No. 1473–60, September 29, 1969, aff'd 433 F.2d 301 (7 Cir. 1970); Olandese v. Commissioner, P–H Memo. T.C. par. 69,228 (1969), appeal dismissed on procedural grounds (10 Cir. 1970); Williams v. Commissioner of Internal Revenue, 53 T.C. 58 (1969), appeal to the Ninth Circuit pending. The household in question need not be the taxpayer's principal place of abode, but it must be his home, where he and the other members of the household live together for a substantial part of the time in question, although the taxpayer may be away on business or pleasure for extended periods.

On the facts found, judgment should have been entered for the government.

Reversed.