Florence L. Long v. Commissioner.
Long v. Commissioner
Docket No. 4076-70 SC.
United States Tax Court
T.C. Memo 1971-136; 1971 Tax Ct. Memo LEXIS 200; 30 T.C.M. (CCH) 588; T.C.M. (RIA) 71136; June 9, 1971, Filed Florence L. Long, pro se, 1509 16th St., N.W., Washington, D.C.R.S. Erickson, for the respondent. SACKS Memorandum Findings of Fact and Opinion SACKS, Commissioner: Respondent determined a deficiency of $157.97 in petitioner's Federal income tax for the year 1968. Two issues are presented for decision: (1) Whether petitioner is entitled to a dependency *201 exemption deduction for her son, Edward Taylor Long, for the taxable year 1968; and (2) whether petitioner qualified as a head of household in 1968 under section 1(b), Internal Revenue Code of 1954. Findings of Fact Some of the facts have been stipulated by the parties and are hereby found accordingly. Florence L. Long (hereinafter referred to as petitioner) was a legal resident of Washington, D.C., when she filed her petition in this case. She filed her Federal income tax return for the year 1968 with the district director of internal revenue at Baltimore, Maryland. On her 1968 Federal income tax return, petitioner claimed exemptions for herself, her twenty-eight-year-old son, Edward Taylor Long, his wife, Maria G. Long, and her two minor granddaughters, Maria and Stephanie, who are daughters of Edward and Maria Long. Respondent disallowed the exemption claimed for her son. During 1968 Edward was a student at the University of Americas, Mexico City, Mexico: In that year the petitioner provided $2,160 for the support and maintenance of her son, his wife and her two grandchildren, and the entire amount was expended by Edward for the support and maintenance *202 of himself, his wife and two children. In 1968 Edward received payments from the Veterans' Administration for service-connected disability compensation of $576 and educational benefits of $1,656.67, or a total of $2,232.67. This $2,232.67 was almost entirely expended by Edward for paying his tuition and other educational expenses while attending the University of Americas. Edward was inducted into the United States Air Force on February 10, 1963. He was initially assigned to Lackland Air Force Base in Texas. After his basic training, he attended weather school at Chanute Air Force Base in Illinois. He married Maria on August 14, 1963, and was later transferred to a United States Air Force Base in England. In 1965 Edward daughter, Maria, was born. In 1965 Edward was transferred to Andrews Air Force Base near Washington, D.C., and was stationed there for a year and a half until his discharge from military service in February 1967. During the time he was stationed at Andrews, Edward and his family first lived in Suitland, Maryland, and later on 36th Street, S.E., Washington, D.C. 589 Ten days after his discharge from military service, Edward and his family moved to Mexico City. *203 Sometime during 1967 a second daughter, Stephanie, was born to Edward and Maria. They lived in Mexico City the remainder of 1967, all of 1968, and until August 1969. Subsequently, Edward and his family moved to Pittsburgh, Pennsylvania, where they presently reside. While Edward was a student at the University of Americas he was working on his master's degree in Anthropology. From September to December 1968, he received a stipend from the University of Americas in the amount of $85 per month, or a total of $340. In order to receive the stipend Edward was required fo teach a course at the University. In addition, he was required to perform other duties for the Anthropology Department. Since he was in Mexico on a student visa, Edward was prohibited by Mexican law from receiving a salary from the University for his teaching services. In lieu of a salary, the University gave him tuition and books. Teaching a course at the University was not a prerequisite to receiving a master's degree in Anthropology. During all of 1968 Edward and his family lived in an apartment in Mexico City. During 1968 the petitioner lived at 1509-16th Street, N.W., Washington, D.C.
During 1968 the petitioner *204 did not live with Edward and his family. Prior to 1968, when Edward was in the United States Air Force, the petitioner did not physically live with Edward and his family. Petitioner did not provide more than half of the total support for her son, Edward, for the taxable year 1968. Opinion 1. Dependency exemption. Section 152 of the Internal Revenue Code of 1954 and the regulations promulgated thereunder provide that in order for a taxpayer to claim an individual as a dependent, in addition to the existence of the required consanguinity, the taxpayer must establish that he or she provided more than half of such claimed dependent's total support during the taxable year. In determining whether the taxpayer did in fact furnish more than half of the total support of an individual who is a child of the taxpayer and who is a student, a special rule regarding scholarships applies. Amounts received as scholarships, as defined in section 117, for study in an educational institution are not to be considered in establishing whether the taxpayer furnished more than half of the total support of such individual. See section 152(d), Internal Revenue Code *205 of 1954; section 1.152-1(c), Income Tax Regs. For purposes of determining amounts received as scholarships the Congressional Committee Reports relating to the original enactment of section 152(d) expressly exclude from the term "scholarships" educational benefits under the Servicement's Readjustment Act of 1944. See H. Rept. No. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. A 43 (1954); S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 195 (1954). Although payments made under any law administered by the Veterans Administration are exempt from taxation, Congress has made it clear that "G. I. Bill" benefits are compensatory in nature, and are therefore considered in determining whether a parent furnishes more than half of the veteran's support. Cf. Mary Keegstra, 48 T.C. 897 (1967). Petitioner provided $2,160 for the support and maintenance of her son, his wife, and her two grandchildren. Such amount was expended by Edward for the support and maintenance of himself and his family. Since the record does not show the individual and collective cost of total support for Edward, his wife, and their two children, we must *206 presume, in the absence of contrary evidence, that the contributions made by petitioner should be allocated equally to each person. Thus, of the $2,160 provided by the petitioner and available for support, $540 must be allocated to each of the four family members. [1]
In addition to the amount provided by petitioner, Edward received payments in the amount of $2,232.67 from the Veterans Administration for service connected disability compensation and educational benefits. Edward testified that these payments were almost exclusively expended by him for paying his tuition and other educational expenses while attending the University. Accordingly, when the amount ($540) provided by petitioner for the support of her son is compared to the amount received by Edward from the Veterans 590 Administration and expended by him for his educational expenses, it is clear that the petitioner did not furnish more than half of Edward's total support in 1968. In addition to the amounts provided by his mother and by the Veterans Administration, Edward provided $340 *207 toward his own support. During the period from September to December 1968, he received a stipend from the University of Americas in the amount of $85 per month for teaching a course and performing other duties at the University. Edward testified that because he was in Mexico on student visa, as opposed to a working visa, he was prohibited by Mexican law from receiving a salary from the University for such services. Thus, in lieu of a salary, the University compensated him by giving him tuition and books. Moreover, teaching a course was not a prerequisite to receiving his degree, but rather was something extra. Accordingly, it is clear that the stipend received by Edward was not a "scholarship" as defined in section 117, but was compensation for services rendered. Bingler v. Johnson, 394 U.S. 741. On this record we must hold that the petitioner has failed to establish that she is entitled to the dependency exemption claimed for Edward in 1968. While she is to be commended for providing a substantial amount for the support of her son and his family, she did not in fact provide more than half of Edward's total support in 1968. 2. Head of household. Petitioner also claims *208 she is entitled to the favorable tax rates granted to a head of household. The resolution of this question depends upon whether petitioner meets the statutory provision that "an individual shall be considered a head of a household only if [he or she] maintains as [his or her] home a household which constitutes the principal place of abode, as a member of such household, of [a dependent child of the taxpayer]." Section 1(b), Internal Revenue Code of 1954. It is settled law that in order to qualify under section 1(b)(2)(A), the taxpayer must actually live in the qualifying household a substantial part of the time. See W. E. Grace, 51 T.C. 685 (1969), affirmed 421 F. 2d 165 (C.A. 5, 1970); Muse v. United States, 434 F. 2d 349 (C.A. 4, 1970); and Biolchin v. Commissioner, 433 F. 2d 301 (C.A. 7, 1970). There must be physical occupancy by the taxpayer to meet the requirements of a "home." It is plain from this record that the petitioner did not physically reside in the "home" of her son and his family at any time before, during, or after the taxable year 1968. Accordingly, we conclude that petitioner does not *209 qualify as a head of household within the meaning of section 1(b), Internal Revenue Code of 1954. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered for the respondent. Footnotes
1. In this connection we note that respondent allowed the dependency exemptions claimed for Edward's wife and his two children.↩