LILLIE B. McDONALD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McDonald v. Commissioner
Docket No. 20664-89
United States Tax Court
T.C. Memo 1991-242; 1991 Tax Ct. Memo LEXIS 271; 61 T.C.M. (CCH) 2764; T.C.M. (RIA) 91242; May 30, 1991, Filed *271 Decision will be entered under Rule 155. Lillie B. McDonald, pro se. Amy Dyar Seals and Robert B. Nadler, for the respondent. SHIELDS, Judge. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioner's Federal income taxes for 1985 and 1986 in the respective amounts of $ 1,303 and $ 1,700. The issues are: (1) Whether petitioner is entitled to file returns for 1985 and 1986 as a head of household under section 2(b)(1); [1] (2) whether petitioner is entitled to a child care credit under section 21 for 1985 in the amount of $ 480; and (3) whether petitioner is entitled to rental loss deductions under section 280A for 1985 and 1986 in the amounts of $ 2,027.56 and $ 7,681.21, respectively. FINDINGS OF FACT Petitioner resided in Memphis, Tennessee, *272 at the time the petition was filed in this case. She filed her income tax returns for 1985 and 1986 with the Internal Revenue Service Center in Memphis. Petitioner's son Jerome L. McDonald, age 34, has been mentally ill since 1974 and has been treated many times in both public and private institutions. His behavior is controllable with medication which he can administer himself, but not in a dependable manner. At the beginning of 1984 he was being treated at Western State Hospital in Staunton, Virginia. By March of 1984 his condition had improved to the extent that the hospital concluded that he could be discharged. However, his doctors recommended that petitioner find an apartment near her where he could live alone but be subject to her supervision. With such an arrangement, the doctors believed that he could gradually become self-sufficient. She located such an apartment near her home in Norfolk, Virginia, and moved him there upon his discharge from the hospital. But as time passed, she became concerned by the fact that she had no relatives in Virginia who could care for her son in the event she became unable to do so. Consequently, in June of 1984 she moved with him to *273 Memphis where she had relatives and where she had been appointed director of the special education department. After moving to Memphis they lived together for a while in a house which she rented. In the fall of 1984 she found a suitable apartment for him at 3719 Robinhood Lane (Robinhood apartment) where he stayed until October of 1985. In the fall of 1984, petitioner also purchased a house for herself at 6149 Belle Forrest (Belle Forrest house). She still owned the house at the end of 1986. The house and the Robinhood apartment were approximately 3 1/2 miles apart. Petitioner kept them both completely furnished. She also maintained at all times adequate food and clothing for herself and her son at both places. Consequently, they could both stay at either place at any time with little notice. While her son was at the Robinhood apartment, petitioner paid different individuals to stay with him during the day. These expenditures are the basis for petitioner's claim for child care credit of $ 480 in 1985. Frequently petitioner and her son spent the nights together either at the Belle Forrest house or at the Robinhood apartment. In the fall of 1985 petitioner's son had to move *274 from the Robinhood apartment because of an increase in the prevalence of crime in the area. Once again petitioner attempted to find an apartment which would permit her to duplicate the living arrangement recommended by her son's doctors. Being unable to locate such an apartment, she decided to buy a house for him at 3854 Cedar Path (Cedar Path house). The Belle Forrest house and the Cedar Path house are approximately one mile apart. Petitioner's son lived in the Cedar Path house from October 1, 1985, through December of 1986. For the use of the house he paid her $ 150 per month plus about $ 1,600 in utilities in 1985 and about $ 1,350 in 1986. In 1985 she paid $ 406.34 for utilities at the Cedar Path house and $ 298.73 in 1986. He made his part of such payments with funds received from Social Security as a disabled child of his deceased father. The fair rental value of the Cedar Path house during 1985 and 1986 was $ 500 per month. The Cedar Path house is located in a safe and quiet subdivision which has a neighborhood-watch program. Its other amenities include walking paths, a club house, a swimming pool and tennis courts. The house has three bedrooms, two baths, a living *275 room, kitchen, dining room and foyer. During 1985 and 1986, the house contained a washer, dryer, electric stove, refrigerator, dishwasher, and a garbage disposal. The house also has a garage. Petitioner purchased the Cedar Path house with the hope and intention of locating some other handicapped person who, for a reduced rent, would be willing to live with and supervise her son. With such an arrangement, petitioner estimated that she could net $ 100 per month from the Cedar Path house. However, petitioner was unable to locate such an individual, and on her returns for 1985 and 1986 she reported the monthly payments received from her son as rental income and claimed deductions for rental expenses totaling $ 2,527.56 and $ 9,481.21 for net rental losses on the Cedar Path house in the amounts of $ 2,027.56 and $ 7,681.21, respectively. Respondent disallowed the losses. From the purchase of the Cedar Path house in October of 1985 through December of 1986 petitioner and her son continued to spend some nights together either at the Belle Forrest house or at the Cedar Path house. There was no fixed pattern as to where they stayed. If they were at the Belle Forrest house and he became *276 unhappy or restless, he would go to the Cedar Path house. On other occasions he would be at the Cedar Path house and petitioner would receive a telephone call from him and she would go and stay with him at the Cedar Path house. Both houses were furnished and she continued to maintain adequate food and clothing for herself and her son at both places. Therefore, they could at a moment's notice stay at either house. However, during 1985 and 1986 her personal papers as well as her voter and vehicle registrations were located at the Belle Forrest house. Her son used the same address for voting purposes. She used a post office box for her receipt of mail. He received mail at both houses. On September 26, 1989, petitioner's son was re-admitted to Western State Hospital. Thereafter petitioner rented the Cedar Path house to an unrelated third party through the Memphis Housing Authority for $ 434 per month. OPINION (1) Head of Household. Petitioner contends that she is entitled to compute her income tax liability for 1985 and 1986 as the head of a household as defined in section 2(b). In his notice of deficiency, respondent determined that petitioner was not the head of a *277 household and computed her tax liability by using the rates applicable to single individuals. Insofar as it is pertinent here, section 2(b) reads as follows: (b) DEFINITION OF HEAD OF HOUSEHOLD. -- (1) IN GENERAL. -- For purposes of this subtitle, an individual shall be considered a head of a household if, and only if, such individual * * * (A) maintains as his home a household which constitutes for more than one-half of such taxable year the principal place of abode, as a member of such household, of -- (i) a son, stepson, daughter, or stepdaughter of the taxpayer, or a descendant of a son or daughter of the taxpayer, * * * The applicable regulation, section 1.2-2(b)(1), Income Tax Regs., reads in relevant part as follows: (b) Head of household. (1) A taxpayer shall be considered the head of a household if, and only if, he * * * (i) maintains as his home a household which constitutes for such taxable year the principal place of abode, as a member of such household, of at least one of the individuals described in subparagraph (3), * * *. * * * (3) Any of the following persons may qualify the taxpayer as a head of household: (i) A son, stepson, daughter, *278 or stepdaughter of the taxpayer, or a descendant of a son or daughter of the taxpayer. * * * * * * (c) Household. (1) In order for a taxpayer to be considered as maintaining a household by reason of any individual described in paragraph * * * (b)(3) of this section, the household must actually constitute the home of the taxpayer for his taxable year. A physical change in the location of such home will not prevent a taxpayer from qualifying as a head of a household. Such home must also constitute the principal place of abode of * * * the [person] specified in * * * paragraph * * * (b)(3) of this section. It is not sufficient that the taxpayer maintain the household without being its occupant. The taxpayer and such other person must occupy the household for the entire taxable year of the taxpayer. * * *
In order to qualify under the above regulation as the head of a household by reason of any individual described in section 2(b)(1)(A)(i), other than a parent, a taxpayer must maintain during the taxable year a household which constitutes the taxpayer's home and principal place of abode as well as the principal place of abode of such individual. This interpretation of *279 the regulation is not unreasonable and is not inconsistent with the plain language of section 2(b) and its legislative history. Grace v. Commissioner, 51 T.C. 685, 687-691 (1969), affd. 421 F.2d 165 (5th Cir. 1969); Muse v. United States, 434 F.2d 349 (4th Cir. 1970), revg. 303 F. Supp. 172 (M.D. N.C. 1969). Ownership and maintenance of the household by the taxpayer is not per se sufficient. Muse v. United States, supra at 353; Grace v. Commissioner, supra; Williams v. Commissioner, 53 T.C. 58 (1969), affd. 441 F.2d 1168 (9th Cir. 1971); Biolchin v. Commissioner, 433 F.2d 301 (7th Cir. 1970), affg. a Memorandum Opinion of this Court. But see Smith v. Commissioner, 332 F.2d 671 (9th Cir. 1964), revg. 40 T.C. 591 (1963). The parties have stipulated that during 1985 and 1986 petitioner resided in the Belle Forrest house while her son resided in the Robinhood apartment from January 1, 1985, to October 1, 1985, and in the Cedar Path house from October 1, 1985, through December *280 1986. From our findings it is apparent that under the particular circumstances involved in this case petitioner's home and principal place of abode during 1985 and 1986 was the Belle Forrest house. It is equally apparent that from January 1 to October 1, 1985, her son's principal place of abode was the Robinhood apartment and that his principal abode was the Cedar Path house from October 1, 1985, to September 26, 1986. In view of the foregoing we conclude that petitioner does not qualify as the head of a household since her home and principal place of abode during 1985 and 1986 was the Belle Forrest house while her son's principal place of abode was the Robinhood apartment and the Cedar Path house. (2) Child Care Credit
Under section 21(a) a credit is allowed for the payment of certain employment-related expenses of maintaining a household for a qualified dependent. The applicable regulation, section 1.44A-1(d), Income Tax Regs., [2] provides as follows: (d) Maintenance of a household -- (1) In general. An individual is considered to have maintained a household for the taxable year (or lesser period) only if the individual (and his or her spouse if the individual is *281 married) have furnished over one-half of the cost incurred for such taxable year (or lesser period) in maintaining the household. The household must actually constitute for the taxable year the principal place of abode of the taxpayer and the qualifying individual or individuals described in paragraph (b) of this section. It is not sufficient that the taxpayer maintain the household without being its occupant. A physical change in the location of the home does not, however, prevent the home from constituting the principal place of abode of the taxpayer and a qualifying individual. * * * [Emphasis added.]
As stated before, it is apparent from our findings that while petitioner admittedly furnished during 1985 over one-half of the cost of maintaining the Belle Forrest house, *282 the Robinhood apartment, and the Cedar Path house neither of these constituted the principal place of abode for both petitioner and her son. Instead petitioner's principal place of abode during 1985 was the Belle Forrest house while the son's principal place of abode in 1985 was the Robinhood apartment to October 1 and the Cedar Path house thereafter. Consequently, petitioner does not qualify for a child care credit in 1985. (3) Rental Loss
Congress enacted section 280A as part of the Tax Reform Act of 1976 (Pub. L. No. 94-455, sec. 601, 90 Stat. 1520, 1569): as its response to the concern that rental of property used as a residence by the taxpayer or members of the taxpayer's family "afforded the taxpayer unwarranted opportunities to obtain deductions for expenses of a personal nature." Bolton v. Commissioner, 77 T.C. 104, 108 (1981), affd. 694 F.2d 556 (9th Cir. 1982). [3]
Under section 280A no deduction *283 can be taken by a taxpayer with respect to a dwelling unit used as a residence by a taxpayer during the taxable year except for deductions, such as interest and taxes, which are allowable without regard to their connection to an income producing activity or a trade or business. Sec. 280A(a). A taxpayer is considered to have used a dwelling unit as a residence during the taxable year if the unit is used for personal purposes for the greater of 14 days or 10 percent of the number of days for which the unit is rented at a fair rental value. Sec. 280A(d)(1). Any day for which a dwelling unit is rented to a member of the taxpayer's family is deemed to have been used by the taxpayer for personal purposes unless the rent charged to the family member reflects the fair rental value of the unit. Sec. 280A(d)(2)(A) and (3)(A). From a stipulation by the parties we have found that the fair rental value of the Cedar Path house during 1985 and 1986 was $ 500 a month. However from October of 1985 through September of 1986 petitioner's son paid petitioner rent of only $ 150 per month. It is apparent, therefore, that during this period petitioner did not receive the fair rental value of the *284 Cedar Path house from her son. Accordingly, the property constitutes a dwelling unit used for personal purposes by petitioner under section 280A, and petitioner is not entitled to the rental deductions except for such items as interest and taxes which are otherwise allowable under sections 163 and 164. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Section 44A of the Code was redesignated as Section 21(a)↩ by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 471(c)(1), 98 Stat. 494, 826, effective for years beginning after December 31, 1983. The regulation remained the same.
3. Saunders v. Commissioner, T.C. Memo 1982-322↩.