Holmes, J., concurring: I agree with nearly everything in the opinion of the Court, except where it states that the Commissioner argues that the phrase “foster care provider’s home” means that “foster care must be provided in a taxpayer’s residence”. See op. Ct. p. 218. That’s not exactly what the Commissioner was arguing — in his brief and at trial, he argued that the phrase “foster care provider’s home” means that foster care must be provided in a taxpayer’s principal residence. See, e.g., Answering Br. for Respondent 24; Pretrial Memorandum for Respondent 8. It is our failure to engage that argument that compels me to write separately. The Commissioner argued throughout this case that the Emil Avenue house needs to be the Strommes’ principal residence for section 131 to apply. He points to section 121’s home-sale exclusion,[1] and reads Dobra as excluding foster care payments from income only if the taxpayers provide care in their principal home.[2] The Strommes even went along with this and argued that the Emil Avenue house was their primary residence. I do not think that the Strommes had to argue quite so vociferously (and unconvincingly) because I disagree with the argument that “home” under section 131 means only a taxpayer’s principal residence. We held in Dobra that “in ordinary, everyday speech, the phrase * * * [foster care provider’s home] means the place (or places) where petitioners reside.” Dobra v. Commissioner, 111 T.C. 339, 345 (1998) (emphasis added). As support for our reading, we looked elsewhere in the Code. See id. at 348. Section 2(b)(1), for example, says that a head of household has to “maintain[] as his home a household which constitutes for more than one-half of such taxable year the principal place of abode * * * of * * * a qualifying child * * * [or] a dependent.” The Ninth Circuit has held that this language does not limit a taxpayer to having only one home. See Dobra, 111 T.C. at 347 (discussing Smith v. Commissioner, 332 F.2d 671 (9th Cir. 1964), rev’g 40 T.C. 591 (1963)); see also Muse v. United States, 434 F.2d 349, 353 (4th Cir. 1970). Acknowledging the Ninth Circuit’s decision, we clarified in Dobra that the relevant inquiry for a “home” is whether the taxpayer resided in the house at issue. See Dobra, 111 T.C. at 348. We recently had another chance to construe a Code section where Congress used the word “home” without nailing “principal” to it. See Driscoll v. Commissioner, 135 T.C. 557 (2010), rev’d and remanded, 669 F.3d 1309 (11th Cir. 2012). According to the Code, a minister of the Gospel doesn’t include in income the “rental value of a home furnished to him as part of his compensation.” Sec. 107(1). Driscoll’s congregation provided him with two houses. Driscoll excluded payments associated with both from his income, but the Commissioner allowed the exclusion only for his principal residence. See Driscoll, 135 T.C. at 558-559. We disagreed: We read section 107 as applying to compensation in the form of a dwelling house; and since the parties had stipulated that the Driscolls’ second house was also Driscoll’s “residence”, we found that it too was covered by the plain meaning of the statute. See id. at 566. In my view, Driscoll supports Dobra: A home is where one resides. And because a taxpayer may reside in more than one house, section 131 does not limit him to only one “home”. But Driscoll was also controversial: It carried only by a seven-to-six vote. See id. at 567, 573. It was reversed by the Court of Appeals for the Eleventh Circuit, which is not where this case would be headed. III. Therein is the explanation for why this case, like McLaine v. Commissioner, 138 T.C. 228 (2012), also filed today, ended up in conference: a reluctance to include in the opinion supporting our decision a fuller explanation of why we’re doing what we do. The audience for our opinions should note a decided lack of majority support, especially after Driscoll, in actually defending the Commissioner’s position that a taxpayer who provides foster care in his home may exclude payments only if (or maybe to the extent that) he provides that care in his principal home. Not only did we implicitly reject that point in Dobra, but as mentioned above, Dobra itself built on cases like Smith v. Commissioner, 332 F.2d at 673, holding that “[a] person can have but one domicile, but we see no reason why a person cannot have two homes.” Once we decided Driscoll, which would seem to have been a harder case — the Code section there does use the singular “a home” — it seems odd not to mention it in Stromme. And if a minister can own more than one “a home,” surely a foster-care provider can provide care in more than one “taxpayer’s home.” Unless, of course, we want to go back on Dobra’s holding that “home” means “residence” and challenge the Ninth Circuit’s similar construction of section 2(b) by adopting a different rule of construction to require us to insert “principal” or “at most one” before “home” where the Code uses that word, or maybe to interpret “home” to mean “domicile”. In one way, of course, Driscoll is directly on point: The opinion of the Court there held that the rule of construction in current section 7701(p)(l) (cross-referencing title 1 of the U.S. Code) applies, and tells us to treat singular nouns as including plural. See Driscoll, 135 T.C. at 565 (citing prior version at section 7701(m)(l)). Judge Gustafson nevertheless argues, as he did in his Driscoll dissent, that “home” has a connotation of singularity, that one can only use one house at a time. See Gustafson op. pp. 227-228. In Driscoll he had further argued that allowing the parsonage allowance for more than one home served no legislative purpose. See Driscoll, 135 T.C. at 569-571. Noting the phrase “to the extent used by him to * * * provide a home,” in section 107(2), he suggested a reading that would require a minister to allocate his rental allowance among his homes with only a part excluded. See id. at 571. One can be sure that this part of Judge Gustafson’s dissent in Driscoll does not apply to section 131. Not only does the phrase “to the extent” not occur in section 131, but the legislative history runs directly opposite: The recordkeeping necessitated by present law requires prorating such expenses as housing and utility costs as well as expenditures for food. The committee believes that the requirement of such detailed and complex recordkeeping may deter families from accepting foster children or from claiming the full exclusion from income to which they are entitled. [H.R. Rept. No. 99-426, at 863 (1985), 1986-3 C.B. (Vol. 2) 1, 863.] The aim of the amendment was to help taxpayers afford the advantages of a home life to children or the disabled in need. And it seems obvious that a family can have more than one home. If not, how would we possibly analyze in any reasonable way, situations like: • a down-on-its-luck family that moves with its foster children among several homes during the course of the year; or • a family where one spouse moves with a small child to the family’s summer home, while the other stays with the school-age children at their principal residence; or • a minister’s family that shuttles between the various homes whose expenses we’ve already decided are all subject to exclusion in Driscoll? As it turns out, there is no majority to take this reasoning on, only a simple reluctance to rule against the Commissioner on one point when he wins on another. A similar reluctance is at work in McLaine, but it’s not one I think it wise for us to indulge in as a general matter. Judge Halpern, in his concurrence in McLaine, lists the advantages of alternative holdings where there’s a reason for reaching alternative arguments. As trial Judge here, I faced the related problem of a bad argument in support of the winning side. The Commissioner raised the argument, and the presence of the still-outstanding Technical Advice Memorandum 9429004 (July 22, 1994), see supra note 2, suggests that the Commissioner will continue to do so until there’s authority to the contrary. Proposing to address it was not gratuitous, but a reasonable progression from Dobra (home means residence, not ownership) to Driscoll (home includes two houses that the parties stipulated were residences) to Stromme — where one party relied on the legal argument that only principal residences are homes, but presented lots of evidence on the factual issue that the house in question wasn’t a residence at all. The answer to the legal question seemed pretty obvious, and would clear up this tiny, murky corner of the Code a bit. See, e.g., Ashcroft v. al-Kidd, 563 U.S. _, _, 131 S. Ct. 2074, 2080 (2011) (court has discretion to correct errors at each step of two-step analysis). We did the same thing in Dobra itself, where we held for the Commissioner, but also rejected his definition of “foster care provider’s home” as meaning “the family residence of a licensed foster care provider in which the licensee is the primary provider of foster care.” Dobra, 111 T.C. at 342-343. It seems odd to have the Court sit in conference on cases where there’s no disagreement on the result, and the only articulated dispute on the underlying legal questions reiterates a dissent from an earlier case decided differently. It is clearly prudent and justified for any Judge not to reach out and analyze tangential issues, or even especially controversial issues, but as in Mitchell v. Commissioner, 131 T.C. 215 (2008), discussed in Koprowski v. Commissioner, 138 T.C. 54, 66 (2012) (Holmes, J., concurring), so today in McLaine and Stromme, we take this counsel of prudence imprudently far: A home-plate umpire shouldn’t be opining on the theoretical applicability of the infield-fly rule, but surely he can tell the catcher that, though the pitch was outside, at least it was above the knees. Section 121 excludes gain from the sale of a principal residence. If a taxpayer owns two residences, he can apply section 121 to only one — the one, in light of the time he spends there during the year and other relevant factors, that is his principal residence. See sec. 1.121 — 1(b)(2), Income Tax Regs. The Commissioner took the one-home approach in a 1994 Technical Advice Memorandum. See Tech. Adv. Mem. 9429004 (July 22, 1994). We don’t give Technical Advice Memoranda any more deference than we would a litigating position taken by the Commissioner. See sec. 6110(b)(1)(A), (k)(3); CSI Hydrostatic Testers, Inc. v. Commissioner, 103 T.C. 398, 409 n.10 (1994), aff'd, 62 F.3d 136 (5th Cir. 1995).