W. E. Grace, Petitioner *v.* Commissioner of Internal Revenue, Respondent

Docket No. 2302-67. Filed January 29, 1969.

*Robert F. Ashley* and *Gene W. Schutze*, for the petitioner.
*W. Read Smith*, for the respondent.

#### OPINION

Dawson, *Judge:* Respondent determined income tax deficiencies and an addition to tax against petitioner as follows:

| Year | Deficiency | Addition to tax sec. 6651(a)[1] |
|---|---|---|
| 1963 | $4, 659. 34 | $232. 96 |
| 1964 | 5, 157. 06 | 0 |
| 1965 | 4, 437. 59 | 0 |

Petitioner seeks a redetermination of deficiencies for the years 1963, 1964, and 1965 only with respect to the amounts of $3,949.45, $4,435.89, and $3,765.77 which arise from the respondent's determination that petitioner is not entitled to compute his tax liability at the rates provided for a head of a household. Thus, the only issue for decision is whether petitioner satisfies all the requirements of section 1(b) (2) (A) to qualify as a "head of a household" for such years.

All of the facts have been stipulated by the parties. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

W. E. Grace (herein called petitioner) is an individual who resided at 1420 Plowman, Dallas, Tex., at the time the petition was filed in this proceeding. He filed his individual Federal income tax returns for the calendar years 1963, 1964, and 1965 with the district director of internal revenue at Dallas, Tex. The return for the year 1963 was untimely filed on April 27, 1964. During these years petitioner resided at 1800 Cedar Crest Boulevard, Dallas, Tex.

---

[1] All section references are to the Internal Revenue Code of 1954 unless otherwise indicated.

Petitioner has not alleged any error with respect to the sec. 6651(a) addition to tax.

Petitioner is, and was, during the years 1963 through 1965 a citizen of the United States, and at the close of such taxable years was not married and was not a surviving spouse as defined in the Internal Revenue Code of 1954.

On December 30, 1957, petitioner married Mary Louise Grace. A son, William Mark Grace, was born to them and was a minor during the years involved herein. Petitioner and Mary Louise were divorced on February 9, 1959. The divorce decree awarded custody of William to his mother (subject to the right of petitioner to visit at all reasonable times), $350 a month for William's support and maintenance, and "the use and benefit" of the residence which petitioner owned and which was located at 8239 Forest Hills Boulevard (herein called the Forest Hills residence) in Dallas, Tex. In granting Mary Louise the "use and benefit" of the Forest Hills residence, the divorce decree provided, in pertinent part, as follows:

The residence at 8239 Forest Hills Boulevard in Dallas, Texas, is set aside for the use and benefit of [Mary Louise] and the minor child until the said minor child reaches the age of 18 years, provided, however, that [Mary Louise] does not remarry during said 18 year period, in which event the property will revert back to the possession of [petitioner].

While petitioner is required to maintain the Forest Hills residence for the use and benefit of Mary Louise and his son, he still remains the legal owner thereof. Mary Louise and the child physically occupied the residence as their principal place of abode during the years 1963, 1964, and 1965.

At no time during these years did the Forest Hills residence constitute petitioner's home or place of abode. Petitioner was never an occupant thereof during such time. His only place of abode, during the period in controversy, was the residence at 1800 Cedar Crest Boulevard in Dallas.

Since the date of the divorce, petitioner has contributed $38,850 toward the support and maintenance of the child, plus the fair rental value of the residence in the approximate amount of $30,000. During the years in question the petitioner has furnished over half of the cost of maintaining the Forest Hills residence which constituted his son's principal place of abode.

On his Federal income tax returns for the calendar years 1963, 1964, and 1965 petitioner computed his tax on the basis of the rates provided for a head of a household. Respondent, in his notice of deficiency, recomputed petitioner's income on the basis of the rates applicable to a single individual, who is not the head of a household, with the following explanation:

It is determined that you may not use head of household rates in computing your tax for the years 1963, 1964, and 1965 because the household in which your dependent son lived during these years was not your home under internal revenue laws.

Petitioner did not maintain *as his home* a household which constituted for the years 1963 through 1965 the principal place of abode, as a member of such household, of his son, William.

It is clear that (1) petitioner maintained the household at 8239 Forest Hills Boulevard because he furnished over half the cost of maintaining it for the years 1963 through 1965; (2) that such household constituted the principal place of abode, as a member of such household, of his minor son; and that at no time during such years did petitioner occupy such household. The parties agree that petitioner meets all the statutory requirements of section 1(b)(2)(A) to qualify as a "head of a household" with one exception: Did petitioner maintain the Forest Hills household *as his home* within the meaning of the statute?

Respondent contends that an individual who makes it possible for a taxpayer to gain the benefits of the head-of-household status under subparagraph (A) of section 1(b)(2) must actually live with the taxpayer in the same place of abode for the entire taxable year, unless he is temporarily absent due to special circumstances. See Rev. Rul. 54–498, 1954–2 C.B. 107. More specifically, respondent's position is that petitioner does not qualify as a head of a household because he and his son occupied different homes with the result that the household in which his son lived was not petitioner's home. Respondent relies on section 1.1–2(c)(1), Income Tax Regs., which provides, in pertinent part, as follows:

In order for the taxpayer to be considered a head of a household by reason of any individual described in subparagraph (A) of section 1(b)(2), *the household must actually constitute the home of the taxpayer for his taxable year.* * * * Such home must also constitute the principal place of abode of at least one of the persons specified in such subparagraph (A). *It is not sufficient that the taxpayer maintain the household without being its occupant.* The taxpayer and such other person *must occupy* the household for the entire taxable year of the taxpayer. [Emphasis added.]

Petitioner claims that he qualifies for head-of-household status, notwithstanding the fact that he did not occupy the same household as his minor son during the years involved herein. He argues that that part of section 1.1–2(c)(1), Income Tax Regs., which provides that for a taxpayer to qualify as head of household he must occupy the household which he is required to maintain under section 1(b)(2)(A), is contrary to the statute and therefore invalid.

Since section 12(c) of the Internal Revenue Code of 1939, the predecessor of section 1(b) of the 1954 Code, contained substantially the same language, we think examination of the legislative history of section 12(c) is helpful in determining the proper construction of section 1(b)(2)(A). Section 12(c) was enacted in 1951 to provide relief for single persons who, in addition to satisfying other statutory requirements, maintained households for the benefit of, and necessarily

shared their income with, certain other individuals. H. Rept. No. 586, 82d Cong., 1st Sess., p. 105 (1951). Congress, however, knowingly hedged the benefits of the head-of-household provision with certain specific and well-defined limitations. Accordingly, section 12(c)(3) provided that an unmarried person who "maintains as his home a household which constitutes the principal place of abode, as a member of such household," of certain described individuals shall be considered as a head of a household.

It is an elementary rule of statutory interpretation that "the words of statutes—including revenue acts—should be interpreted where possible in their ordinary, everyday senses." *Crane* v. *Commissioner*, 331 U.S. 1, 6 (1947). By providing in plain language that the household required to be maintained under section 12(c)(3) had to be maintained by the taxpayer "as his home," we think Congress intended that such household also had to be the taxpayer's place of abode or house in which he actually lived. Moreover, the legislative history persuades us that this is the construction intended by Congress. The following explanation of section 12(c) is contained in the House report:

A taxpayer will not be considered as the head of a household unless such household actually constitutes his home for the taxable year and also constitutes the principal place of abode for such taxable year of another member of the household who meets the requirements of section 12(c)(3) (A) or (B). * * * Section 12(c) is intended to apply only where the taxpayer and such other members of the household *live together in such household* during the entire taxable year (except for temporary absences due to special circumstances). * * * Similarly, such home will not be considered as constituting the principal place of abode of a dependent of the taxpayer who is supported by the taxpayer for a substantial part of the year in lodgings other than those occupied by the taxpayer even though such person may at various periods live in the household, unless the residence of the dependent in other lodgings is not permanent and is due to necessity such as illness. It is also intended that the *household constitute the actual place* of abode of the taxpayer *and it is not sufficient that the taxpayer maintain the household without being an occupant thereof.* [H. Rept. No. 586, 82d Cong., 1st Sess., p. 106 (1951).[2] Emphasis added.]

Hence, under the 1939 Code, a taxpayer could not qualify as a head of a household unless the individual who made it possible for him to gain the benefits thereof actually lived in the taxpayer's home. And as already indicated by the plain words of the statute and the legislative history, this meant that the taxpayer and such individual had to live in the same home, i.e., the same place of abode.

Congress was well aware that section 12(c) operated to the disadvantage of the single taxpayer, who had to bear the added expense of

---

[2] See the Senate Finance Committee report containing substantially the same language, S. Rept. No. 781, Part 2, 82d Cong., 1st Sess., p. 14 (1951).

maintaining a household for a dependent but who could not qualify for the benefits of the head-of-household status, because the household so maintained was not his home. This was made evident by the attempt in the House of Representatives to eliminate the requirement that the dependent had to live in the taxpayer's home to qualify the taxpayer as head of a household. Under the House version of H.R. 8300, which was to be the Internal Revenue Code of 1954, a taxpayer could qualify as a head of a household without the dependent actually living in the taxpayer's home. The House report accompanying H.R. 8300 stated:

> Your committee believes that the present provision is unfair in that it denies full income splitting to widows and widowers with small children who prior to the death of their spouses had this tax advantage. Moreover, the fact that a dependent may not be able, or willing, to live in the home of the taxpayer may increase, rather than decrease the expenses of the taxpayer. * * *
>
> * * * Also, under the bill the dependent giving the taxpayer head of family status no longer must live in his household. [H. Rept. No. 1337, 83d Cong., 2d Sess., p. 5 (1954).]

While this change was adopted by the House, it was rejected by the Senate. In doing so, the Senate committee report said:

> *Your committee has restored present law.* Thus, heads of households will continue to receive half, rather than full, benefits of income splitting and the *dependents qualifying the taxpayer for such status must live in the taxpayer's household.* * * * S. Rept. No. 1622, 83d Cong., 2d Sess., p. 5 (1954). [Emphasis added.]

The conflict between the House and Senate versions was resolved by compromise. The conference report resolved it as follows:

> Amendments Nos. 2 and 3: Under the House bill, the benefits of full income splitting were extended to those taxpayers who could qualify as "head of family." In order to qualify, a taxpayer must have supported a son, daughter, father, mother, brother, or sister, or certain relatives of his wife if she were dead and he had not remarried. *It was not necessary for such dependents to live in the taxpayer's household in order to qualify him as head of family.*
>
> Under the Senate amendment, the provisions of existing law relating to head of household were restored. Thus, a head of household would continue to receive half (rather than full) benefits of income splitting and *the dependents qualifying the taxpayer must actually live in his household.* * * *
>
> The House *recedes* with amendments. Under the conference agreement, the provisions of the Senate amendment are retained with three exceptions * * * [None of which are significant here.] [H. Rept. No. 2543, 83d Cong., 2d Sess., pp. 21–22 (1954).]
>
> [Emphasis added.]

The only substantial change brought about by the 1954 Code in the head-of-household provision is that under section 1(b)(2)(B) a taxpayer may now qualify as a head of a household through the support as a dependent of either of his mother or father *even though they do not live in his home,* provided he maintains a household for either

of them and such household constitutes such parent's principal place of abode. H. Rept. No. 2543, 83d Cong., 2d Sess., p. 22 (1954).

We conclude from the legislative history that an informed Congress enacted section 1(b)(2)(A) with full realization of the existence and operation of the statutory requirement that the household which a taxpayer is required to maintain to qualify as a head of a household must also be his home or place of abode.

This conclusion is buttressed by another elementary principle of statutory interpretation, i.e., effect should be given to all provisions of a statute wherever it is reasonably possible. *United States* v. *Dinerstein*, 362 F. 2d 852 (C.A. 2, 1966). Unless subparagraph (A) of section 1(b)(2) is construed to mean that the household required to be maintained has to be the joint home of both the taxpayer and individual described therein, in the sense that it is the place of abode of both, the phrase "as his home" would have no meaning. It would be a nullity. It is well settled that under subparagraph (B) a taxpayer may qualify as a head of a household through a dependent mother or father, even though the dependent parent does not live in the taxpayer's home. *John Robinson*, 51 T.C. 520 (1968). But subparagraph (B) does not contain the directive that the taxpayer maintain "as his home" such household. Accordingly, to give effect to the words "as his home" in subparagraph (A), the household required to be maintained by the taxpayer, if he is to qualify as a head of a household, must be the joint home of both the taxpayer and the dependent.

We view petitioner's challenge to the validity of the regulation against this backdrop of legislative history. Petitioner asserts that the particular part of section 1.1–2(c)(1) which provides that "occupancy is a prerequisite" to qualifying as a head of a household is invalid since, he claims, it is contrary to the statute. In determining whether this challenge has merit, we look to the guidelines established by the Supreme Court in *Commissioner* v. *South Texas Lumber Co.*, 333 U.S. 496, 501 (1948):

Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with the administration of these statutes which should not be overruled except for weighty reasons. * * *

There is nothing in this particular regulation which is inconsistent with the plain language of the statute. The regulation is not "unreasonable" or "plainly inconsistent" with section 1(b)(2)(A). Instead, we find it consistent with congressional intent as evidenced by the plain language of the statute and its legislative history.

In the 1954 Code revisions, Congress restored existing law with respect to section 1(b)(2)(A) and reaffirmed the legislative history

contained in H. Rept. No. 586 and S. Rept. No. 781. We think it is significant that the language used in section 1.1–2(c)(1) is taken almost directly from these committee reports.[3]

Petitioner is unable to show any reason sufficiently "weighty" to support his contention that section 1.1–2(c)(1) of the regulations should be declared invalid. Therefore, we uphold its validity as properly implementing section 1(b)(2)(A).

Finally, petitioner argues that, notwithstanding the language of the statute and its legislative history, he qualifies as a head of a household even though the household in which his son lived was not also petitioner's home or place of abode, and that the opinion of the Court of Appeals for the Ninth Circuit in *Smith* v. *Commissioner*, 332 F. 2d 671 (C.A. 9, 1964), reversing 40 T.C. 591 (1963), is controlling herein. We disagree. We find the *Smith* case distinguishable.

The taxpayer in *Smith*, a well-to-do single woman, maintained a home in Reno, Nev., her principal place of abode, and one in Beverly Hills, Calif., the principal place of abode of her adopted son. During the 3 years in issue, she spent 15 months in Reno, for an average of 4⅔ months a year; 10 months in Beverly Hills, for an average of 3⅓ months a year; and 11 months outside both Nevada and California, for an average of 4 months a year. When not traveling, she spent 60 percent of her time in Nevada and 40 percent in California. *Smith* v. *Commissioner*, *supra* at 673. It is readily apparent that, as between her home in Reno and the one in Beverly Hills, the taxpayer spent a substantial amount of time at the latter. It was in the context of this particular factual setting that the Court of Appeals in *Smith* said (332 F. 2d at 673):

> A person can have but one domicile, but we see no reason why a person cannot have two homes. The statute requires that the dependent must be a member of a household which constitutes for such taxable year the principal place of abode of such dependent child or parent. But the language of the statute does not require that the taxpayer maintain the household for which he claims a deduction [sic] as his *principal* place of abode. [Emphasis added.]

To be sure, *Smith* supports the proposition that the household required to be maintained under section 1(b)(2)(A) does not have to be maintained as the taxpayer's principal place of abode; however, it does not go so far as to eliminate the statutory requirement that

---

[3] For example, compare "the household must actually constitute the home of the taxpayer for his taxable year," Sec. 1.1–2(c)(1), Income Tax Regs., with "A taxpayer will not be considered as the head of a household unless such household actually constitutes his home for the taxable year." H. Rept. No. 586, p. 106; compare "The taxpayer and such other person must occupy the household for the entire taxable year of the taxpayer." Sec. 1.1–2(c)(1), Income Tax Regs., with "the taxpayer and such other member of the household [must] live together in such household during the entire taxable year," H. Rept. No. 586, p. 106; and finally compare "It is not sufficient that the taxpayer maintain the household without being its occupant," Sec. 1.1–2(c)(1), Income Tax Regs., with "It is not sufficient that the taxpayer maintain the household without being an occupant thereof," H. Rept. No. 586, p. 106.

such household must constitute the "actual place of abode of the taxpayer." This requirement was explicitly recognized by the Court of Appeals in its reference to the legislative history in footnote 1 on page 673, as follows:

The Senate report does refer to an intention that the household for which deduction [sic] is claimed should constitute the actual place of abode of the taxpayer; but it does not refer to any requirement of days or weeks or months to make it "actual," or that it must become the "principal" place of abode. Cf. U.S. Code Cong. and Adm. Service 1951, Vol. II, p. 1893 to p. 1894, Floor Discussion, House, p. 1946, Conference Report, p. 2124.

We believe it is clear from this language that the court construed section 1(b)(2)(A) to mean that the household required to be maintained has to be, in some sense, the taxpayer's actual, though not principal, place of abode. It follows from this that the Court of Appeals was satisfied that the Beverly Hills residence was the taxpayer's "actual place of abode." Such is not the situation in this case. Unlike *Smith*, petitioner had only one home or place of abode—his apartment at 1800 Cedar Crest Boulevard. Thus petitioner did not, at any time pertinent herein, occupy the Forest Hills residence *as his home* in the sense that it was ever his place of abode. The Forest Hills residence did not constitute petitioner's "actual place of abode." Moreover, in view of the disability placed on him by the divorce decree, petitioner could not have occupied the residence, and cannot do so as long as his son is under the age of 18 and his former wife remains unmarried.[4]

Accordingly, we hold that petitioner did not qualify as a head of a household in the years 1963, 1964, and 1965 since he did not occupy the Forest Hills residence as his "actual place of abode."

*Decision will be entered for the respondent.*

---

[4] With respect to petitioner's contention that during the years in question he "intended" to physically reoccupy the residence, we think such an intention is immaterial. Moreover, since his former wife has custody of the minor son, we seriously doubt if petitioner would be able to satisfy the requirements for head of a household, even if he were to regain possession of the Forest Hills residence. In all likelihood, if the former wife left the residence, she would take the child with her. Cf. *Laraia* v. *United States,* 232 F. Supp. 602 (D. Mass. 1964).