MICHAEL P. AND ELIZABETH B. NAMMACK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1929–67.   Filed September 29, 1971.

*Richard J. Hiegel* and *J. Barclay Collins II*, for the petitioners.
*Kimball K. Ross*, for the respondent.

OPINION

Raum, *Judge:* Prior to the enactment of section 214 in 1954, expenses incurred for child care were held to be completely nondeductible. Such expenses were considered essentially personal in nature and therefore nondeductible even where they had been incurred to enable the taxpayer to engage in employment. See *Mildred A. O'Connor*, 6 T.C. 323; *Henry C. Smith*, 40 B.T.A. 1038, affirmed per curiam 113 F. 2d 114 (C.A. 2). In 1954 Congress enacted section 214 which provided a limited deduction for certain child care expenses. See H. Rept. No. 1337, 83d Cong., 2d Sess., pp. 30, A60–A62 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 35–36, 220–221. The amount and availability of the deduction offered by section 214 were increased by an amendment in 1964. See Pub. L. 88–272, sec. 212(a), 78 Stat. 49–50; H. Rept. No. 749, 88th Cong., 1st Sess., pp. 57–58, A52–A56 (1963); S. Rept. No. 830, 88th Cong., 2d Sess., pp. 68–71, 218–219 (1964); H. Rept. No. 1149, 88th Cong., 2d Sess., p. 6 (1964). Section 214 now allows a deduction to a woman, a widower, or a husband whose wife is incapacitated or institutionalized.[2] Section 214(b) limits the amount of the deduction

---

[2] SEC. 214. EXPENSES FOR CARE OF CERTAIN DEPENDENTS.

(a), GENERAL RULE.—There shall be allowed as a deduction expenses paid during the taxable year by a taxpayer who is a woman or widower, or is a husband whose wife is incapacitated or is institutionalized, for the care of one or more dependents (as defined in subsection (d)(1)), but only if such care is for the purpose of enabling the taxpayer to be gainfully employed.

(b) LIMITATIONS.—

(1) DOLLAR LIMIT.—

(A) Except as provided in subparagraph (B), the deduction under subsection (a) shall not exceed $600 for any taxable year.

(B) The $600 limit of subparagraph (A) shall be increased (to an amount not above $900) by the amount of expenses incurred by the taxpayer for any period during which the taxpayer had 2 or more dependents.

(2) WORKING WIVES AND HUSBANDS WITH INCAPACITATED WIVES.—In the case of a woman who is married and in the case of a husband whose wife is incapacitated, the deduction under subsection (a)—

(A) shall not be allowed unless the taxpayer and his spouse file a joint return for the taxable year, and

(B) shall be reduced by the amount (if any) by which the adjusted gross income of the taxpayer and his spouse exceeds $6,000.

This paragraph shall not apply, in the case of a woman who is married, to expenses incurred while her husband is incapable of self-support because mentally or physically defective, or, in the case of a husband whose wife is incapacitated, to expenses incurred while his wife is institutionalized if such institutionalizaton is for a period of at least 90 consecutve days (whether or not within one taxable year) or a shorter period if terminated by her death.

(3) CERTAIN PAYMENTS NOT TAKEN INTO ACCOUNT.—Subsection (a) shall not apply to any amount paid to an individual with respect to whom the taxpayer is allowed for his taxable year a deduction under section 151 (relating to deductions for personal exemptions).

to $600 or, if the taxpayer has two or more dependents, to $900. Moreover, where the taxpayer is a married woman, and in the absence of specified extenuating circumstances, she and her spouse must file a joint return in order to qualify for the deduction, and the amount of the allowable deduction must be reduced by the excess of the spouses' combined adjusted gross income over $6,000.

The controversy in this case is confined to the constitutionality of section 214(b). The parties agree that the requirements specified in section 214(a) have been satisfied and that the claimed deduction of $2,860 is reasonable in amount.[3] They also agree that by reason of section 214(b) and the fact that Mr. and Mrs. Nammack's adjusted gross income in 1965 amounted to $14,262, the taxpayers are not entitled to any deduction whatever under the statute. Mrs. Nammack's position is that section 214(b) violates the fifth amendment to the United States Constitution and that a deduction in the amount of $2,860 for child care is allowable under either section 214(a) as a child care expense or under section 162 as an ordinary and necessary business expense.

Relying upon demographic and sociological data presented to this Court, petitioner has argued that most children in the United States are entrusted to the care of women; that it has traditionally been the woman's responsibility to care for her children in the home while the husband provides income for the family by pursuing an occupation; that if a woman with children works, it is almost always her responsibility to secure and maintain adequate arrangements for child care; that the costs of child care are traditionally regarded as an expense of the woman's employment when the family decides whether she should work; that even small increments in the cost of taking on a job can affect that decision; that the $600 and $900 limitations on the deductibility of child care expenses of section 214(b) prevent deduction of the full amount of the expenses which most mothers must incur in order to secure child care; and that section 214(b)(2)(B), which reduces the amount of the allowable deduction by the excess of a married couple's adjusted gross income over $6,000, deprives a substantial number of married women of the benefit of any deduction for child care expenses. Petitioner contends that the provisions of section 214(b) single out one class of individuals—women with children—for discriminatory treatment with regard to an expense functionally indistinguishable from other ordinary and necessary business expenses and that such treatment is violative of petitioner's right to due process under the fifth amendment. Cf. *Bolling* v. *Sharpe*, 347 U.S. 497.

---

[3] The parties have stipulated that Mr. and Mrs. Nammack were not entitled to a deduction under sec. 151, I.R.C. 1954, with respect to Mrs. Prince. No such deduction was claimed on their return. Cf. sec. 214(b)(3).

We have taken into account all of the evidence presented by petitioner and we have carefully considered the arguments marshalled on her behalf. It is our conclusion that section 214(b) is constitutional and that the claimed deduction must be disallowed.

Section 162 allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." On the other hand, section 262, I.R.C. 1954, states that except as otherwise provided, "no deduction shall be allowed for personal, living, or family expenses." These sections are written in broad and general terms, and petitioner does not challenge the constitutionality of either of them. However, the task of differentiating ordinary and necessary business expenses from personal expenses is often difficult and thorny, and the distinction between them is frequently one of degree rather than kind. Because of their intensely personal nature many expenses incurred by a taxpayer solely because he or she is engaged in a trade or business are nevertheless not deductible. See, e.g., *Harold Gilberg*, 55 T.C. 611, 616–617 (commuting expenses); *Stanley Marlin*, 54 T.C. 560 (certain educational expenses); *Richard Walter Drake*, 52 T.C. 842 (haircut expenses of an enlisted man); *Kenneth H. Hicks*, 47 T.C. 71, 75 (expense of travel from business assignment to selective service physical examination); *Ronald D. Kroll*, 49 T.C. 557, 565–568 (tuition expenses of child actor). Prior to 1954, child care expenses too were nondeductible. See *Mildred A. O'Connor*, 6 T.C. 323; *Henry C. Smith*, 40 B.T.A. 1038. The 1954 legislation was designed to allow their deductibility to a limited extent and under specified circumstances. In so providing, Congress recognized that in certain instances, and to a certain extent, the cost of child care may be comparable to an employee's business expenses. See S. Rept. No. 1622, 83d Cong., 2d Sess., p. 36 (1954). It is well established that deductions are a matter of legislative grace. See *Commissioner* v. *Sullivan*, 356 U.S. 27, 28; *White* v. *United States*, 305 U.S. 281, 292; *New Colonial Co.* v. *Helvering*, 292 U.S. 435, 440; *Helvering* v. *Independent Life Ins. Co.*, 292 U.S. 371, 381; *Burnet* v. *Thompson Oil & G. Co.*, 283 U.S. 301, 304; *Stanton* v. *Baltic Mining Co.*, 240 U.S. 103. We think that in enacting section 214 Congress acted reasonably and not arbitararily. Cf. *Brushaber* v. *Union Pac. R.R.*, 240 U.S. 1, 24–26. As the Supreme Court has recently stated in upholding a State welfare regulation under the equal protection clause of the 14th amendment (*Dandridge* v. *Williams*, 397 U.S. 471, 485–487):

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical

nicety or because in practice it results in some inequality." *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U.S. 61, 78. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co.* v. *City of Chicago*, 228 U.S. 61, 69–70. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan* v. *Maryland*, 366 U.S. 420, 426.

\* \* \* \* \* \* \*

We do not decide today that the Maryland regulation is wise, that it best fulfills the relevant social and economic objectives that Maryland might ideally espouse, or that a more just and humane system could not be devised. Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure, certainly including the one before us. But the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court. \* \* \*

Cf. *United States* v. *Maryland Savings-Share Ins. Corp.*, 400 U.S. 4, reversing per curiam 308 F. Supp. 761 (D. Md.) ; *L. M. Lockhart*, 43 T.C. 776, 781. Taking into account the dual character—personal as well as business—of the expenses in question, Congress was free to classify such expenses in either category, and the fact that it chose to allow the deduction only in the case of the less affluent family does not constitute a violation of petitioner's rights under the fifth amendment.

In our judgment a different conclusion is not called for simply because the nondeductibility of certain child care expenses might impose a particular burden on working women. We note that Mr. and Mrs. Nammack filed a joint return for 1965 and that their failure to qualify for a deduction under section 214 works to the disadvantage of each of them. See sec. 6013(d)(3), I.R.C. 1954.[4] Moreover, in view of the broad range of financial, economic, and property relationships affected by the income tax provisions of the Internal Revenue Code, and in view of the fact that men and women sometimes perform different roles in our society, it is not unusual for particular applications of those provisions to affect members of one sex more than members of the other. Cf. *Richard Walter Drake*, 52 T.C. 842; *Kenneth H. Hicks*, 47 T.C. 71, 75. Indeed, in *United States* v. *Mitchell*, 403 U.S. 190, recently decided by a unanimous Supreme Court, it was not even suggested that the Constitution might preclude a married woman's liabil-

---

[4] Cf. *Dandridge* v. *Williams*, 397 U.S. 471, 477–478, where the Court stated with regard to a State limitation on the maximum welfare grant available to a family with dependent children :

"It cannot be gainsaid that the effect of the Maryland maximum grant provision is to reduce the per capita benefits to the children in the largest families. Although the appellees argue that the younger and more recently arrived children in such families are totally deprived of aid, a more realistic view is that the lot of the entire family is diminished because of the presence of additional children without any increase in payments. Cf. *King* v. *Smith, supra*, at 335 n. 4 (Douglas, *J.*, concurring). It is no more accurate to say that the last child's grant is wholly taken away than to say that the grant of the first child is totally rescinded. In fact, it is the *family* grant that is affected. \* \* \*"

ity for income tax with respect to one-half of community income controlled by her husband (403 U.S. at 205–206) :

It must be conceded that these cases are "hard" cases and exceedingly unfortunate for the two women taxpayers.[6] Mrs. Mitchell loses the benefit of her inheritance from her mother, an inheritance that ripened after the dissolution of her marriage. Mrs. Angello loses her beneficiary interest in her deceased husband's life insurance policy. This takes place with each wife not really aware of the community tax situation, and not really in a position to ascertain the details of the community income. The law, however, is clear. The taxes were due. They were not paid. Returns were not even filed. The "fault," if fault there be, lies with the four taxpayers and flows from the settled principles of the community property system. If the wives were to prevail here, they would have the best of both worlds.

The remedy is in legislation. An example is Pub. L. 91–679 of January 12, 1971, 84 Stat. 2063, adding to the Code subsection (e) of § 6013 and the final sentence of § 6653(b). These amendments afford relief to an innocent spouse, who was a party to a joint return, with respect to omitted income and fraudulent underpayment. Relief of that kind is the answer to the respondents' situation.

[Footnote omitted.] [5]

It has been all too obvious to us that, in accordance with one of the popular movements of the day, there has been an attempt to create a cause célèbre out of this case by petitioner and her counsel, who have argued in their otherwise able brief that "the only possible purpose" of the limitations of section 214(b) "was the clearly impermissible one of keeping women in the home." We find no such extreme or Machiavellian purpose in respect of women on the part of Congress or the President, who approved the bill which became the Internal Revenue Code of 1954. To the contrary, the legislation was intended to liberalize prior law, which allowed no deduction whatever for child care expenses. To be sure, petitioner has presented a strong equitable argument to establish that her position is just, and it may well be that Congress did not go far enough. However, that is an argument that may properly be addressed to Congress in seeking further liberalization of the law.[6] The matter is within its discretion and we are satisfied that there has been no infringement of petitioner's constitutional rights. Moreover, even if there were any doubts about the constitutionality of the legislation such doubts would have to be resolved in favor of validity of the statute in view of the presumption of constitutionality of an act of Congress, which is particularly strong in the case of a revenue measure. Cf. *Nicol* v. *Ames*, 173 U.S. 509, 514–515; *Penn Mutual Indemnity Co.*, 32 T.C. 653, 658–659, affirmed 277 F. 2d 16 (C.A. 3).

*Decision will be entered for the respondent.*

---

[5] Cf. H.R. 1, 92d Cong., 1st Sess., sec. 531 (1971) (providing liberalizing amendments to sec. 214(b) ; passed by the House on June 22, 1971).

[6] See fn. 5, *supra*.