*Decisions will be entered under Rule 50.*

JOHN A. BAYLESS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8263–71. Filed December 27, 1973.

John A. Bayless, pro se.

*Martin F. Klotz*, for the respondent.

HALL, *Judge:* Respondent determined deficiencies in petitioner's Federal income taxes and an addition to tax as follows:

| Year | Deficiency | Addition to tax sec. 6651(a) |
|---|---|---|
| 1967 | $367. 48 | 0 |
| 1968 | 417. 87 | $104. 47 |
| Total | 785. 35 | 104. 47 |

The issues for decision are (i) whether section 1(b)(2)[1] is unconstitutional and (ii) whether petitioner's failure to file his 1968 Federal income tax return on time was due to reasonable cause.

FINDINGS OF FACT

Some of the facts are stipulated and are found accordingly. Petitioner offered no evidence at trial, and does not appear to question the correctness of any of respondent's factual determinations.

Petitioner was a resident of Los Angeles, Calif., at the time he filed his petition herein. Petitioner timely filed his 1967 Federal income tax return with the district director of internal revenue at Los Angeles. However, petitioner did not file, and made no attempt to file, his 1968 Federal income tax return until August 1970 when he gave it to an internal revenue agent who was auditing his return for another year. Petitioner was transferred to Germany by his employer in March 1969, and at that time had not accumulated the information necessary to file his 1968 return. His request for an extension of time in which to file his

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue. Note that the section number (but not the substance) of sec. 1(b)(2) was changed to sec. 2(b) by the Tax Reform Act of 1969.

1968 return was denied. Petitioner left for Germany without filing his 1968 return. He returned from Germany in April 1970.

In July 1966 petitioner's wife was granted an interlocutory decree of divorce, and on February 5, 1968, the final divorce decree was entered. Pursuant to the decree, petitioner's wife was granted custody of their four minor children and occupancy of their jointly owned home in Canoga Park, Calif., and petitioner was ordered to pay $160 a month alimony and $400 a month child support. Petitioner was the sole support of both his former wife and his children during 1967 and 1968.

During the entire period in issue, petitioner's children lived in the Canoga Park home with their mother, and petitioner lived elsewhere.

Petitioner has not remarried. On his 1967 and 1968 income tax returns, he used the head of household rate schedule to compute his income tax liability. Respondent disallowed his use of the head of household rates and determined that he should have used the rate schedule for single persons.

OPINION

Petitioner concedes that in 1967 and 1968 he did not meet the requirement of section 1(b)(2)[2] that he maintain as his home a household which constituted the principal place of abode of one or more of his children. All four children at all times in 1967 and 1968 lived separate and apart from him and with their mother. Moreover, petitioner was not unmarried at the close of 1967, as required by section 1(b)(2), but had merely an interlocutory divorce decree. *Merle Johnson,* 50 T.C. 723 (1968). However, petitioner contends that those parts of section 1(b)(2) which require that a taxpayer live with his child or children and be unmarried are unconstitutional. Respondent disagrees and so do we.

[2] Sec. 1(b)(2) provides as follows:

(2) DEFINITION OF HEAD OF HOUSEHOLD.—For purposes of this subtitle, an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year, is not a surviving spouse (as defined in section 2(b)), and either—

(A) maintains as his home a household which constitutes for such taxable year the principal place of abode, as a member of such household, of—

(i) a son, stepson, daughter, or stepdaughter of the taxpayer, or a descendant of a son or daughter of the taxpayer, but if such son, stepson, daughter, stepdaughter, or descendant is married at the close of the taxpayer's taxable year, only if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or

(ii) any other person who is a dependent of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or

(B) maintains a household which constitutes for such taxable year the principal place of abode of the father or mother of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such father or mother under section 151.

For purposes of this paragraph * * *, an individual shall be considered as maintaining a household only if over half of the cost of maintaining the household during the taxable year is furnished by such individual.

Petitioner first argues "that the physical occupancy test for qualification as head of household results in the denial of tax relief to divorced individuals which is available to other taxpayers bearing identical family support burdens" and as such is unconstitutional as violative of the due process clause of the fifth amendment to the United States Constitution. Moreover, he argues that the physical-occupancy test results in a "chilling effect upon the right of personal privacy guaranteeing to the individual the freedom to lawfully live wheresoever he chooses, with whomever he chooses." Petitioner further argues that the unavailability of head of household rates to married but separated persons is a constitutionally impermissible legislative classification. While petitioner also claims rights under the first, third, fourth, and ninth amendments to the Constitution, the basis of petitioner's principal argument appears to be that the requirements of section 1 (b) (2) that a taxpayer be unmarried at the close of the taxable year and that he physically reside with his children create such an arbitrary classification as to constitute denial of the due process of law guaranteed by the fifth amendment. See, e.g., *Schneider* v. *Rusk*, 377 U.S. 163 (1964) ; *Bolling* v. *Sharpe*, 347 U.S. 497 (1954).

At the outset, we note the heavy burden petitioner has in order to prove the unconstitutionality of section 1 (b) (2) :

> It is always an exceedingly grave and delicate duty to decide upon the constitutionality of an act of the Congress of the United States. The presumption, as has frequently been said, is in favor of the validity of the act, and it is only when the question is free from any reasonable doubt that the court should hold an act of the lawmaking power of the nation to be in violation of that fundamental instrument upon which all the powers of the Government rest. This is particularly true of a revenue act of Congress. The provisions of such an act should not be lightly or unadvisedly set aside, although if they be plainly antagonistic to the Constitution it is the duty of the court to so declare. The power to tax is the one great power upon which the whole national fabric is based. It is as necessary to the existence and prosperity of a nation as is the air he breathes to the natural man. It is not only the power to destroy, but it is also the power to keep alive.[3]

Furthermore, as the Supreme Court has stated concerning the equal protection clause of the 14th amendment :

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U.S. 61, 78. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co.* v. *City of Chicago*, 228 U.S. 61, 69–70. "A statutory discrimination will not be set aside if any state of facts

---

[3] *Nicol* v. *Ames*, 173 U.S. 509, 514–515 (1899).

reasonably may be conceived to justify it." *McGowan* v. *Maryland*, 366 U.S. 420, 426.[4]

This line of reasoning is equally applicable to the Federal legislature and possible fifth amendment limitations on congressional power to tax. E.g., *Michael P. Nammack*, 56 T.C. 1379, 1383–1384 (1971), affirmed per curiam 459 F. 2d 1045 (C.A. 2, 1972), certiorari denied 409 U.S. 991 (1972). In the instant case, we have no difficulty in holding the legislative classifications in question well within the congressional power to classify for tax purposes. The validity of classification by marital status is clear. *Shinder* v. *Commissioner*, 395 F. 2d 222 (C.A. 9, 1968), affirming per curiam a Memorandum Opinion of this Court. And the reasonable basis for the requirement that the dependent share his abode with a head of household is equally clear from the legislative history of section 1(b)(2). See *W.E. Grace*, 51 T.C. 685 (1969), affirmed per curiam 421 F. 2d 165 (C.A. 5, 1969). The physical-occupancy test is supportable, for example, as a reasonable method for Congress to minimize disputes over which parent may enjoy the benefit of the head of household rates. Petitioner has made no showing that the classification to which he objects is any less supportable or more arbitrary than any of a number of analogous tax classifications which have withstood constitutional challenge in this Court. E.g., *Michael P. Nammack, supra*, and *Eleanor C. Shomaker*, 38 T.C. 192 (1962). Petitioner's contentions under the first, third, fourth, and ninth amendments, raised for the first time in his brief, are unsupported by relevant authority, and are rejected as frivolous.

Thus, considering both the strong presumption of constitutionality in which a revenue statute is clothed as well as the deference that the judiciary must generally show to legislative value choices, we find that the statute is not unconstitutional. Any inequities resulting from section 1(b)(2) are matters for Congress.

Second, petitioner claims that his failure timely to file his 1968 return was due to reasonable cause. We hold that petitioner has failed to prove that his delinquency was due to reasonable cause rather than willful neglect. *C. Fink Fischer*, 50 T.C. 164, 177 (1968). Petitioner's only argument was that had he prevailed on the first issue and been entitled to use the head of household rates, his withheld taxes would have covered his tax liability and no addition to tax would have been owed.[5] We can say only that petitioner gambled and he lost.

*Decision will be entered for the respondent.*

---

[4] *Dandridge* v. *Williams*, 397 U.S. 471, 485 (1970).

[5] Sec. 301.6651–1(d), Proced. & Admin. Regs., provides that the addition to tax under sec. 6651(a)(1) is imposed only on the net amount of tax due.