CARLIN J. BLACK AND VIRGINIA H. BLACK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3986–75, 7461–75.      Filed December 21, 1977.

Carlin J. Black and Virginia H. Black, pro se.
*Peter W. Mettler,* for the respondent.

### OPINION

TANNENWALD, *Judge:* Respondent determined deficiencies in petitioners' Federal income tax as follows:

| Docket No. | Year | Deficiency |
|---|---|---|
| 3986–75 ................... | 1972 | $2,468.64 |
| 7461–75 ................... | 1973 | 2,011.08 |

The only issue for decision is whether section 214[1] is constitutional.

All of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

At the time of filing the petition herein, petitioners, husband and wife, resided in New York, N. Y. Petitioners filed joint Federal income tax returns for the taxable years 1972 and 1973 with the Office of the Internal Revenue Service at Holtsville, N.Y.

Petitioners were both employed full time throughout the years 1972 and 1973 and had two children under the age of 15 during those years. Petitioners employed persons to care for their children during those times when they were simultaneously away from home in connection with their jobs. They deducted the amounts paid these persons from their gross income as child care expenses under section 214. Respondent disallowed the deductions.

Insofar as pertinent to this case, during the taxable years in issue, section 214[2] imposed three requirements in respect of child

---

[1] All references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.

[2] SEC. 214. EXPENSES FOR HOUSEHOLD AND DEPENDENT CARE SERVICES NECESSARY FOR GAINFUL EMPLOYMENT.

(a) ALLOWANCE OF DEDUCTION.—In the case of an individual who maintains a household which includes as a member one or more qualifying individuals (as defined in subsection (b)(1)), there shall be allowed as a deduction the employment-related expenses (as defined in subsection (b)(2)) paid by him during the taxable year.

(b) DEFINITIONS, ETC.—For purposes of this section—

(1) QUALIFYING INDIVIDUAL.—The term "qualifying individual" means—

(A) a dependent of the taxpayer who is under the age of 15 and with respect to whom the taxpayer is entitled to a deduction under section 151(e),

\*      \*      \*      \*      \*      \*      \*

(c) LIMITATIONS ON AMOUNTS DEDUCTIBLE.—(1) IN GENERAL.—A deduction shall be allowed under subsection (a) for employment-related expenses incurred during any month only to the extent such expenses do not exceed $400.

\*      \*      \*      \*      \*      \*      \*

(d) INCOME LIMITATION.—If the adjusted gross income of the taxpayer exceeds $18,000 for the taxable year during which the expenses are incurred, the amount of the employment-related expenses incurred during any month of such year which may be taken into account under this section shall (after the application of subsections (e)(5) and (c)) be further reduced by that portion of one-half of the excess of the adjusted gross income over $18,000 which is properly allocable to such month. For purposes of the preceding sentence, if the taxpayer is married during any period of the taxable year,

care expenses: (1) Taxpayers were required to reduce the allowable deduction by one-half the amount by which their adjusted gross income exceeded $18,000; (2) married persons had to file a joint return in order to obtain the deduction; and (3) the amount of the deduction could not exceed $400 for any month.

Petitioners concede that they are not entitled to any deduction under section 214, but contend that each of the foregoing requirements constitutes an arbitrary and unreasonable classification in violation of the U.S. Constitution. Their argument is based upon the equal protection clause of the 14th Amendment, the principles of which are encompassed within the 5th Amendment as applied to Federal legislation. See, e.g., *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n. 2 (1975).

We have previously considered both the limitation on adjusted gross income and the limitation on the amount deductible and upheld both. *Nammack v. Commissioner*, 56 T.C. 1379 (1971), affd. per curiam 459 F.2d 1045 (2d Cir. 1972). Inferentially, we also sustained the requirement that married couples must file a joint return to obtain a section 214 deduction. Petitioners ask us to reconsider and reverse our decision in *Nammack*. As we see it, the only ground upon which such action on our part might be justified is that, as petitioners urge, subsequent decisions, particularly those of the Supreme Court, require the conclusion that section 214 imposes an impermissible classification on the basis of marital status, sex, or interference with family relationships. For the reasons hereinafter set forth, we disagree with petitioners' assertions.

For economic legislation such as is involved herein, the test of constitutionality is whether the legislative action is "rationally based and free from invidious discrimination." See *Dandridge v. Williams*, 397 U.S. 471, 487 (1970). To this test should be added the principle that, even where there are doubts, the usual presumption of constitutionality is "particularly strong in the

there shall be taken into account the combined adjusted gross income of the taxpayer and his spouse for such period.

(e) SPECIAL RULES.—For purposes of this section—

(1) MARRIED COUPLES MUST FILE JOINT RETURN.—If the taxpayer is married at the close of the taxable year, the deduction provided by subsection (a) shall be allowed only if the taxpayer and his spouse file a single return jointly for the taxable year.

Sec. 214 has been superseded by sec. 44A, enacted in the Tax Reform Act of 1976, Pub. L. 94–455, sec. 504(a)(1).

case of a revenue measure." See *Nammack v. Commissioner, supra* at 1385.

Viewed against such background, we find nothing in the subsequently decided cases which supports the conclusion that section 214 violates the above-mentioned test of constitutionality. All of the cases, to which petitioners point, deal with conceded discrimination and hold that the usual test of rational basis was not met. E.g., *Weinberger v. Wiesenfeld, supra* (social security benefits payable to the widow, but not the widower); *Eisenstadt v. Baird,* 405 U.S. 438 (1972) (contraceptives permitted to be furnished to married, but not unmarried persons). Cf. *U.S. Dept. of Agriculture v. Moreno,* 413 U.S. 528 (1973) (food stamps denied for unrelated persons in a household); *Stanton v. Stanton,* 421 U.S. 7 (1975) (support for female children until age 18 as against male children until age 21); *Frontiero v. Richardson,* 411 U.S. 677 (1973) (limitation of benefits to spouses of female members of the Armed Forces which was not applicable to benefits of spouses of male members).

Not only do the recent Supreme Court decisions fail to support petitioners' position, but other subsequently decided cases, both in substance and in rationale, reinforce the conclusions we reached in *Nammack* and our decision herein. *Barter v. United States,* 550 F.2d 1239 (7th Cir. 1977), affg. per curiam sub nom. *Johnson v. United States,* 422 F. Supp. 958 (N.D. Ind. 1976) (upholding different tax rates for married and single taxpayers); *Shinder v. Commissioner,* 395 F.2d 222 (9th Cir. 1968), affg. per curiam T.C. Memo. 1967–73 (same); *Bruinooge v. United States,* 550 F.2d 624 (Ct. Cl. 1977) (sustaining different exclusions from combat pay for enlisted personnel and warrant officers, on the one hand, and commissioned officers on the other); *Estate of Klein v. Commissioner,* 63 T.C. 585, 593–594 (1975), affd. 537 F.2d 701 (2d Cir. 1976) (sustaining section 6013(e) which provides different treatment of an innocent spouse depending upon whether there is an omission from gross income exceeding 25 percent); *Kellems v. Commissioner,* 58 T.C. 556 (1972), affd. per curiam 474 F.2d 1399 (2d Cir. 1973) (upholding different tax rates for married and single taxpayers).

Nor are we impressed with petitioners' attempt to justify their claim that section 214 constitutes a constitutionally prohibited discrimination on the basis of sex—an area in which the legislation under scrutiny may well have to meet a more

stringent standard of review. See *Frontiero v. Richardson, supra.* We upheld section 214 against a similar attack in *Nammack v. Commissioner, supra.* Petitioners concede that section 214 is neutral on its face, a fact which, among others, clearly distinguishes this case from *Moritz v. Commissioner,* 469 F.2d 466 (10th Cir. 1972), revg. 55 T.C. 113 (1970), relied upon by petitioners.[3] They assert, however, that it can be assumed that section 214 is based on the premise that married women will not work unless it is an economic necessity, but petitioners admit they have no evidence to support this argument. They also argue that section 214 operates as an economic deterrent to women who wish to work outside the home, but they fail to show that section 214 does, in fact, have such an impact. Moreover, in light of the present day pattern of working wives, it is not unlikely that the husband, rather than the wife, may be so influenced. In this connection, we note that the mere possibility that the application of section 214 may be disadvantageous is not sufficient ground for holding it unconstitutional. See *Washington v. Davis,* 426 U.S. 229, 239–242 (1976). We also note that in its most recent pronouncement, the Supreme Court pointed out that financial need alone (which can be equated with petitioners' argument of an extra financial burden purportedly imposed on married couples by section 214) was insufficient to sustain the position that the requirement of equal protection had not been met. See *Maher v. Roe,* U.S. , 97 Sup. Ct. 2376, 2381 (1977) (holding that the denial of the use of State aid to pay the pregnancy-related medical expenses of indigent women did not impinge on any fundamental right or otherwise violate the test of rationality). In short, we are satisfied, as we were in *Nammack v. Commissioner, supra,* that section 214 should not be invalidated on the basis of sex discrimination.[4]

Petitioners also contend that section 214 constitutes an unconstitutional intervention into the affairs of the family in

---

[3]We, of course, recognize that patent discrimination in a statute itself is not necessarily a precondition to unconstitutionality if it is clear that discrimination in fact exists. Cf. *Alexander v. Louisiana,* 405 U.S. 625 (1972).

[4]Aside from our substantive views as to the continued validity of our decision in *Nammack v. Commissioner,* 56 T.C. 1379 (1971), we would be inhibited in any consideration of reversing the decision by its affirmance by the Second Circuit (459 F.2d 1045), the Circuit Court to which an appeal herein would lie. *Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. on the substantive issue 445 F.2d 985 (10th Cir. 1971); *Brewster v. Commissioner,* 67 T.C. 352, 357–358 (1976), on appeal (D.C. Cir., Sept. 30, 1977).

that it interferes with their decisions regarding the care of their children. We recognize that the Supreme Court has, on several occasions, held governmental interference with marriage and family life unconstitutional. *Meyer v. Nebraska,* 262 U.S. 390 (1923) (criminal prohibition against teaching foreign languages to children who had not passed the eighth grade); *Pierce v. Society of Sisters,* 268 U.S. 510 (1925) (criminal law requiring parent or guardian to send child to public school); *Griswold v. Connecticut,* 381 U.S. 479 (1965) (criminal law restricting married persons' access to contraceptives); *Loving v. Virginia,* 388 U.S. 1 (1967) (criminal law prohibiting interracial marriages). But, these cases have invalidated direct prohibitions on individual decisions regarding marriage and family life. In contrast, section 214 has only an incidental and indirect effect on the family unit. As we read the Supreme Court decisions, they do not have the reach for which petitioners argue. See *Maher v. Roe, supra; Barter v. United States, supra.*

Finally, petitioners argue that classification based on marital status is an unconstitutional intrusion into the free exercise of religion protected by the First Amendment. We need not consider whether the choice to marry or not to marry is a religious choice as petitioners contend (or that their choice of marriage was infringed as to which petitioners furnished no proof). Assuming arguendo that such a choice is within the scope of the First Amendment, section 214 does not improperly infringe religious freedom. The fact that a law with a secular purpose may have the effect of making the observance of some religious beliefs more expensive does not render the statute unconstitutional under the First Amendment. *Braunfeld v. Brown,* 366 U.S. 599, 605–607 (1961).

Moreover, religious beliefs have consistently been held not to furnish a basis for complaint about our tax system, at least where the statutory provision attacked is not specifically based, or cannot be shown to be based, upon a classification grounded on religion. *Barter v. United States, supra; Winters v. Commissioner,* 468 F.2d 778, 781 (2d Cir. 1972), affg. T.C. Memo. 1971–290; *Russell v. Commissioner,* 60 T.C. 942, 945–947 (1973).

In sum, the rubric of discrimination cannot be used to move such inequities as may arise out of the application of section 214 from the legislative arena of tax reform to the judicial arena of constitutionality. As we the Seventh Circuit Court of Appeals stated

in *Barter v. United States, supra,* "the inequities asserted to inhere in the 'marriage penalty' whatever may be their persuasiveness as arguments for legislative change, do not rise to the level of constitutional violations of [petitioners'] rights." See also *Nammack v. Commissioner,* 56 T.C. at 1385.

*Decisions will be entered for respondent.*