CHAN H. LEE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lee v. Commissioner
Docket No. 5099-79.
United States Tax Court
T.C. Memo 1980-195; 1980 Tax Ct. Memo LEXIS 389; 40 T.C.M. (CCH) 433; T.C.M. (RIA) 80195; June 4, 1980, Filed Chan H. Lee, pro se. Robert F. Geraghty, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax for the calendar years 1975 and 1976 in the amounts of $3,518.10 and $3,736.38, respectively. One of the issues raised by the pleadings has been disposed of by agreement of the parties, leaving for our decision the following: 1. Whether petitioner is entitled to a deduction for each of the years here in issue for a dependency exemption for his son who resided in China; 2. Whether petitioner is entitled to compute his income tax for each of the years here in issue on the basis of being head of a household; and 3. In the alternative, if petitioner is not entitled to compute his tax as head of a household, is he entitled to compute his tax as a single individual rather than a married person filing a separate return. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner Chan H. Lee, who resided in *392 San Jose, California at the time of filing his petition in this case, filed an individual income tax return for each of the calendar years 1975 and 1976 with the Internal Revenue Service Center, Fresno, California. Petitioner is a medical doctor. He graduated from medical school in Shanghai, China prior to 1949. In 1949, he came to the United States intending to stay approximately 6 months to study as an intern and resident at hospitals located in the United States. When petitioner came to the United States his wife, Wei P. Lee, and their son, Ming Lee, who was born in 1948, remained in China. A few months after petitioner left China in 1949 the Chinese Nationalist government was overthrown and the People's Republic of China was established. For this reason petitioner has never returned to China. Although he has had some correspondence with his family, petitioner has not seen nor spoken to his wife, his mother, or his son since he left China in 1949. Petitioner became a naturalized citizen of the United States in 1960. However, his wife, Wei P. Lee, is not and has never been a citizen or resident of the United States. Throughout the entire years 1975 and 1976 she was *393 a citizen of China and a resident of Wuhan, China. Petitioner's son, Ming Lee, was not a citizen or resident of the United States at any time during the years 1975 and 1976. He was from his birth and until the time of the trial a resident of China and has never been in the United States. During the years 1975 and 1976 petitioner received some letters from his son, and on the basis of these letters concluded that his wife and son resided in the same apartment at Wuhan, China during the entire years 1975 and 1976. Petitioner's mother, Shu Lee, was not a citizen or resident of the United States at any time during 1975 or 1976. She has resided all her life in China and during the years 1975 and 1976 was and from that time to the time of trial continued to be a resident of Shanghai, China. From the time petitioner arrived in the United States throughout and including the time of the trial of this case has has worked in various capacities in the medical profession in the United States. Prior to 1955, he worked in various hospitals at various locations in the United States. In January 1955, he moved to California and has been working in various positions in the medical profession *394 in California since that date. During 1975 and 1976 and at the time of the trial of this case he held the position of medical examiner of Santa Clara County, California. While working at his various positions, including the time he has been working in California, petitioner has purchased from his earnings various stocks and has made other investments with income which he earned. Every year since he has resided in the United States when he has been able to do so petitioner has attempted to transfer some funds to his wife and his mother in China. From 1966 through 1972 or 1973 he found no means by which he believed he could transfer funds to his wife or his mother. In each of the years 1975 and 1976, a Mr. Ziar, a resident of Hong Kong, made a trip to the United States. Petitioner saw Mr. Ziar when he was in the United States in each of these years and gave him $1,200 each year with the request that he attempt to transfer the amount to his wife. Mr. Ziar was a friend of petitioner's wife's father. Petitioner also gave Mr. Ziar additional cash in each of these years with the request that he transfer the money to petitioner's mother in Shanghai.Petitioner also sent some funds to *395 the Bank of Hong Kong with the request that the funds be transferred to his mother in Shanghai during each of the years here in issue. The total amount of cash which petitioner attempted to have transferred to his mother in each of the years here in issue was $800. From the letters petitioner received from his son during the years 1975 and 1976, he concluded that his wife was employed during those years as a clerk in a hospital in Wuhan, China and that his son was employed during those years as a road maintenance man for the City of Wuhan. For each of the calendar years 1975 and 1976, petitioner's wife filed a United States nonresident alien income tax return, Form 1040NR, reporting adjusted gross income of $20,929 and $22,882, respectively, all of which was recorded as being from her community property interest in petitioner's salary and investments made by petitioner with community funds. On each of these returns she claimed a personal exemption for herself. Petitioner on his Federal income tax return for 1975 claimed two dependency exemptions, explaining the second exemption under the space designated for explanations of other dependents as follows: (a) Name Shu Lee
*396 (b) Relationship Mother (c) Months lived in your home. If born or died during year, write B or D. 12 (d) Did dependent have income of $750 or more? No (e) Amount YOU furnished for dependent's support. If 100% write ALL. All (f) Amount furnished by OTHERS including dependent. [left blank] On his return, he computed his tax on the basis of an unmarried head of household. On petitioner's income tax return for 1976 he claimed his mother, Shu Lee, as a dependent, giving exactly the same explanation as that given on his 1975 return.Petitioner computed his tax on his 1976 return on the basis of an unmarried head of household. Respondent in his notice of deficiency disallowed the exemption claimed by petitioner for his mother, Shu Lee, for each of the years 1975 and 1976 with the explanation that the claimed deduction was not allowable "because it has not been established that the claimed dependent meets all of the requirements for an exemption." Respondent recomputed petitioner's income tax on the basis of a married person filing a separate return. At the trial petitioner claimed to be entitled to a dependency exemption deduction for his son, Ming Lee. *397 OPINION Section 151, I.R.C. 1954, [1] as applicable to the years 1975 and 1976, allows as a deduction to each taxpayer a personal exemption of $750 and an exemption of $750 for each dependent as defined in section 152. Section 152(a) defines a dependent to mean any of certain individuals, including a son and a mother, "over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer." Section 152(b) provides that for the purposes of section 152 the term "dependent" does not include any individual who is not a citizen or national of the United States unless such individual is a resident of the United States or of a country contiguous to the United States. Section 152(b)(3), however, provides that this exclusion from the term "dependent" shall not apply to *398 any child of the taxpayer "legally adopted by him, if, for the taxable year of the taxpayer, the child has as his principal place of abode the home of the taxpayer and is a member of the taxpayer's household, and if the taxpayer is a citizen or national of the United States." Although the dependency exemption claimed by petitioner was for his mother, as petitioner himself recognizes, his mother does not fit the definition of dependent since she was not a citizen or national of the United States and did not reside in the United States or a country contiguous to the United States. Barr v. Commissioner,51 T.C. 693 (1969). Petitioner claimed, however, at the trial that he was entitled to a dependency exemption for his son even though he had not claimed such an exemption on his return. It is petitioner's contention that even though his son, who was 27 years old during the first year here in issue, resided in China he had in fact had as his principal place of abode petitioner's home since petitioner contends the apartment in which his wife and their son lived in China was his home even though, because of political difficulties, he was unable to reside with them in *399 that home. Although not citing any cases in support of his position in this regard, petitioner apparently is attempting to rely on Smith v. Commissioner,332 F.2d 671 (9th Cir. 1964), reversing 40 T.C. 591 (1963). The Smith case involved a taxpayer who spent approximately 60 percent of her time at a house she owned in Nevada and approximately 40 percent of her time in another house she owned and maintained for an adopted son in California. Since an appeal in this case would lie to the Ninth Circuit we would under our holding in Golsen v. Commissioner,54 T.C. 742 (1970), affd. on another issue 445 F.2d 985 (10th Cir. 1971), be obligated to follow the holding of the Ninth Circuit even though it reversed the holding of this Court. However, the facts in this case simply do not fit within the holding of the Smith case. Also, the facts do not fit within the exception contained in section 152(b)(3) of any child of the taxpayer legally adopted by him who, for the taxable year, had his principal place of abode in the home of the taxpayer and was a member of the taxpayer's household. However, we need not reach these *400 questions since under the facts here present petitioner has totally failed to show that he contributed more than one-half o the support of his son during either the calendar year 1975 or the calendar year 1976. Petitioner has shown that he attempted to send $1,200 to his wife during each of these years through Mr. Ziar. He has not shown whether in fact his wife received this money and if she did how much, if any, of the money was used for the support of petitioner's son. Petitioner's son was an adult who to the best of petitioner's knowledge was employed by the City of Wuhan. Insofar as this record shows, petitioner's son fully supported himself during each of the years here in issue. For this reason we dispose of this issue on the factual basis that petitioner hs failed to show that he contributed over one-half of the support of his son during either the year 1975 or 1976.
Section 1(d) provides for the rate of tax on the income of an individual who is the head of a household as defined in section 2(b). Section 2(b)[2] provides that an individual shall be considered a head of a household *401 if he is not married at the close of the taxable year and either maintains as his home a household which constitutes for such taxable year the principal place of abode of "a son, * * *, but if such son * * * is married at the close of the taxpayer's taxable year, only if the taxpayer is entitled to a deduction for the taxalbe year for such person under section 151, or * * * maintains a household which constitutes for such taxable year the principal place of abode of the * * * mother of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such * * * mother under section 151." Clearly, under the provisions of this section petitioner is not entitled to file as head of a household because of any support he might have furnished to his mother. A sheretofore pointed out, since his mother resided in China during the entire taxable year and was not a citizen of the United States at any time during either of the taxable years, petitioner is not entitled to a deduction for his mother under section 151 and therefore is not entitled to claim the head of a household filing status based on any support he might have furnished to his mother. *402 In our view the facts here clearly show that petitioner did not maintain as his home in either of the years here in issue a household which constituted the principal place of abode of his son. The facts show that at no time during either of the taxable years here in issue did petitioner's son reside in the household petitioner maintained in San Jose, California. The parties stipulated that petitioner's son, Ming Lee, during the years here in issue was a resident of Wuhan, China. Based on letters petitioner had from his son, petitioner concluded that his son resided in the apartment with Wei P. Lee, petitioner's wife and the mother of petitioner's son, during both of the years here in issue. It is petitioner's position that since he attempted to send funds to his wife during 1975 and 1976 for support of her household, the apartment in which she and his son live in Wuhan, China should be considered his household, thereby enabling him to claim the filing status of head of a household.[3] In our view, even if petitioner had established that he maintained the household for his wife in Wuhan, China, that fact would not bring this case within the Ninth Circuit's holding in Smith v. Commissioner, supra. *403 In the Smith case the Circuit Court recognized that in order for a taxpayer to be entitled to compute his tax as head of a household he must have resided at some time during the taxable year in the household he maintained for his child. See Smith v. Commissioner, supra at 673, n. 1. See also our discussion of the Smith case in Grace v. Commissioner, 51 T.C. 685, 691-692 (1969). However, we decide this issue in the instant case on the factual basis that petitioner failed to show that he furnished the money to maintain his wife's household in Wuhan, China in either 1975 or 1976. Petitioner did show that he gave money to a friend of his wife's father who lived in Hong Kong with the hope of getting the money to his wife. However, he did not show what portion of the money, if any, actually was received by his wife or, if any of such money was received by her, to what extent, if any, it was used to maintain the household in which petitioner's wife and son resided. We therefore conclude that petitioner is not entitled to use the filing status of *404 head of a household. [4]
*405 Petitioner, in the alternative, claims that if he is not entitled to use the filing status of head of a household he should be entitled to file as a single individual. The parties have stipulated that petitioner was married during both of the taxable years here in issue and that his wife filed a nonresident alien return reporting her community property share of petitioner's salary and income from the community property investments held in petitioner's name. Section 1(d) sets forth the rates of taxes for married individuals filing separate returns. This section provides that there is imposed on the taxable income of "every married individual (as defined in section 143) who does not make a single return jointly with his spouse under section 6013 * * * a tax determined" from the table set forth therein. Section 143[5] provides that the determination of whether an individual is married shall be made as of the close of his taxable year, except where the spouse dies during the taxable year. It provides that an individual legally separated from his spouse under a decree of divorce or of separate *406 maintenance shall not be considered as married. However, the record here shows that petitioner and his wife were neither divorced nor separated under a decree of separate maintenance. Section 143(b) provides that a married individual living apart from his spouse who maintains as his home a household which constitutes for more than one-half of the taxable year the principal place of abode of a dependent, within the meaning of section 152, who is a son and with respect to whom the taxpayer is entitled to a deduction under section 151, shall not be considered married. Here, as we have pointed out, petitioner has totally failed to show that he is entitled to claim his son as a dependent for either of the years here in issue. Therefore, under section 143(a) petitioner was a married individual filing a separate return in each of the years here in issue. *407 Petitioner apparently relies on the provisions of section 2(b)(2)(C) that for purposes of this subsection (the subsection dealing with definition of head of a household) a taxpayer shall be considered as not married at the close of the taxable year if at any time during the taxable year his spouse is a nonresident alien. By its clear terms (see n.2) section 2(b)(2)(C) applies only to the determination of whether petitioner meets the definition of head of a household. We therefore conclude that petitioner, for each of the years here in issue, is required to file as a married individual filing separately since his wife has filed a separate nonresident alien return for each of the years here in issue. [6] See Bhargava v. Commissioner, 603 F.2d 211 (2d Cir. 1979), affg. a Memorandum Opinion of this Court. *408 We decided the only issues presented to us for respondent, but because the parties have disposed of certain issues raised by the pleadings by agreement, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue.↩
2. Section 2(b) provides in part as follows: SEC. 2. DEFINITIONS AND SPECIAL RULES. * * *
(b) Definition of Head of Household.-- (1) In general.--For purposes of this subtitle, an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year, is not a surviving spouse (as defined in subsection (a)), and either-- (A) maintains as his home a household which constitutes for such taxable year the principal place of abode, as a member of such household, of-- (i) a son, stepson, daughter, or stepdaughter of the taxpayer, or a descendant of a son or daughter of the taxpayer, but if such son, stepson, daughter, stepdaughter, or descendant is married at the close of the taxpayer's taxable year, only if the taxpayer is entitled to a deduction for the taxable year for such person under section 151, or * * *
(B) maintains a household which constitutes for such taxable year the principal place of abode of the father or mother of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such father or mother under section 151. For purposes of this paragraph, an individual shall be considered as maintaining a household only if over half of the cost of maintaining the household during the taxable year is furnished by such individual.↩
3. Both parties recognize that since petitioner's wife was a nonresident alien, under the provisions of section 2(b)↩2(C) that "a taxpayer shall be considered as not married at the close of his taxable year if at any time during the taxable year his spouse is a nonresident alien," petitioner would not be prohibited from claiming a head of household status because of being married. 4. Petitioner primarily relies for his claim as head of a household on a letter he wrote on December 31, 1962, to the District Director, Internal Revenue Service, Los Angeles, California, the body of which reads in full as follows: I would like to ask a question concerning individual income tax. A taxpayer is a naturalized citizen whose alien wife and son reside abroad. Does this taxpayer qualify as "Head of household"? Your early reply would be greatly appreciated. and the reply he received thereto from the Chief of Collection Division of the District Director's office dated January 29, 1963, the body of which reads in full as follows: In reply to your inquiry requesting information, you are advised as follows: Revenue Ruling 55-711 states it is permissable to claim "Head of Household" under your circumstances. Please reference this ruling on your income tax return and indicate your wife is filing Form 1040B. We are enclosing Form 1040B with instructions on where to mail it. Mrs. Lee should declare one-half your income and withholding tax on her return, because you live in a community property state. The revenue ruling to which the letter to petitioner refers, Rev. Rul. 55-711, 1955-2 C.B. 13, after pointing out that a person is not considered married for thepurpose of head of household filing status provisions if his spouse is a nonresident alien and that the nonresident alien wife is not the taxpayer's dependent so as to authorize his claiming head of household status on her account concludes: On the other hand, a taxpayer may qualify as a "head of a household" by virtue of his unmarried descendants or unmarried stepchild, even though such descendant or stepchild is not a citizen of the United States, nor a resident of the United States or a contiguous country. As an example, a citizen of the United States residing abroad may claim the status of a "head of a household" by virtue of his nonresident alien wife's child by a former marriage. The Commissioner of course is not bound by an incorrect statement made by an agent. Furthermore, the revenue ruling cited merely provides that a person in petitioner's situation "may qualify" as a head of a household if he meets the other requirements of the statute which, as we have pointed out, petitioner does not.↩
5. Section 143 provides: SEC. 143. DETERMINATION OF MATERIAL STATUS. (a) General Rule.--For purposes of this part-- (1) The determination of whether an individual is married shall be made as of the close of his taxable year; except that if his spouse dies during his taxable year such determination shall be made as of the time of such death; and (2) An individual legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married. (b) Certain Married Individuals Living Apart.--For purposes of this part, if-- (1) an individual who is married (within the meaning of subsection (a)) and who files a separate return maintains as his home a household which constitutes for more than one-half of the taxable year the principal place of a dependent (A) who (within the meaning of section 152) is a son, stepson, daughter, or stepdaughter of the individual, and (B) with respect to whom such individual is entitled to a deduction for the taxable year under section 151, (2) such individual furnishes over half of the cost of maintaining such household during the taxable year, and (3) during the entire taxable year such individual's spouse is not a member of such household, such individual shall not be considered as married.↩
6. Petitioner at the trial made some reference to section 879, I.R.C. 1954, dealing with the tax treatment of certain community income in the case of a resident or citizen of the United States who is married to a nonresident alien individual. However, this section of the Code was added by Pub.L. 94-455, 90 Stat. 1613, sec. 1012(b)(1), and by its terms is applicable only to the taxable years beginning after December 31, 1976. This section therefore is not applicable to the years here involved. Petitioner makes no contention that either he or his wife made an election under section 6013(g), I.R.C. 1954↩ (which was effective for years beginning after December 31, 1975) to treat his wife as a resident of the United States for purposes of filing a joint return. In fact, the record shows to the contrary since his wife filed a nonresident alien return. Petitioner has made no contention that he and his wife would be entitled to file a joint return or that he ever attempted to elect such filing status.