T.C. Memo. 1997-159

UNITED STATES TAX COURT

ROBERT CHARLES FOHRMEISTER, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11748-95.                    Filed March 31, 1997.

Robert Charles Fohrmeister, pro se.

D. Lyndell Pickett, for respondent.

MEMORANDUM OPINION

PANUTHOS, Chief Special Trial Judge:  This case was heard
pursuant to the provisions of section 7443A(b)(3) and Rules 180,
181, and 182.[1]  Respondent determined a deficiency in

---

[1]  All section references are to the Internal Revenue Code
as amended, unless otherwise indicated.  All Rule references are
to the Tax Court Rules of Practice and Procedure.

petitioner's 1991 Federal income tax in the amount of $6,062 and an accuracy-related penalty under section 6662(a) in the amount of $1,212.

After a concession by petitioner,[2] the issues remaining for decision are: (1) Whether petitioner is entitled to a business bad debt deduction in the amount of $4,500 claimed on Schedule C; (2) whether petitioner failed to report wage income in the amount of $23.20; (3) whether petitioner is entitled to a claimed casualty loss deduction in the amount of $6,490; (4) whether petitioner is liable for the 10-percent additional tax imposed by section 72(t), in regard to distributions he received from an employer-provided pension plan and an individual retirement account (IRA); and (5) whether petitioner is liable for the accuracy-related penalty under section 6662(a).[3]

For the purpose of convenience, we have combined the findings of fact and discussion of pertinent legal issues. Some of the facts have been stipulated, and they are so found. The

---

[2] Petitioner concedes that he made a mathematical error on one of his Schedules C in the amount of $100. Due to the resulting increase in petitioner's adjusted gross income, claims for medical expense deductions were reduced by $7.50, claims for casualty loss deductions were reduced by $10, and claims for miscellaneous deductions were reduced by $2. Therefore, the total adjustment attributable to petitioner's concession is $119.50.

[3] Respondent's notice of deficiency also reduced petitioner's claimed medical expense and miscellaneous deductions. We regard these adjustments as computational and do not separately address them.

stipulation of facts and attached exhibits are incorporated herein by this reference. At the time of filing the petition, petitioner resided in Clearwater, Florida.

We begin by noting that respondent's determinations are presumed correct, and petitioner bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and petitioner bears the burden of proving that he is entitled to any deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

1. Bad Debt Deduction

Between 1982 and 1986, petitioner lent a total of $5,000 to Rochelle Laumbattus. Petitioner received neither security nor a promissory note in return for the loan. Although Ms. Laumbattus repaid $500 of the loan soon after it was made, no further payments were made until 1992. In 1991, Ms. Laumbattus informed petitioner that she was not generating enough current income to repay the loan. The record also contains the following written statement by Ms. Laumbattus: "In 1991 I was unable to repay the loan. But am now making payments on it."

Petitioner did not pursue any legal action in an attempt to collect the balance of the loan. In 1991, petitioner claimed a business bad debt deduction in the amount of $4,500 on a Schedule C that listed "Business Manager" as petitioner's profession. During the years 1992 through 1995, however, Ms. Laumbattus fully

repaid the loan.[4]  Respondent determined that the loan in question did not become worthless in whole or in part during the year in question, and disallowed the claimed bad debt deduction.

As a general rule, section 166 allows a deduction for any debt that becomes worthless during the taxable year.  Sec. 166(a)(1).  To establish entitlement to a bad debt deduction, a taxpayer must prove that a bona fide debt existed, and that the debt became worthless in the year that the deduction is claimed.  Rule 142(a); American Offshore, Inc. v. Commissioner, 97 T.C. 579, 593 (1991); sec. 1.166-1(c), Income Tax Regs.  Respondent does not question whether a bona fide debtor-creditor relationship existed between petitioner and Ms. Laumbattus; rather, respondent argues that petitioner has failed to establish the worthlessness of the debt during the year in question.[5]

The question of whether a debt has become worthless is one of fact, to be determined by an examination of all surrounding facts and circumstances.  American Offshore, Inc. v. Commissioner, supra at 594.  Generally, a taxpayer may establish

---

[4]  Petitioner contends that he included the loan repayments as income on Schedules C during the appropriate years; however, the Schedules C do not specify the nature of the gross receipts for the years 1992 through 1995.  On the basis of our conclusions, infra, we need not, and do not, decide whether petitioner reported said loan repayments in subsequent years.

[5]  Respondent also argues that the debt was not a business bad debt, and that the amount of the debt has not been established.  Based on our conclusions, infra, we need not, and do not, decide these questions.

the worthlessness of a debt by offering proof of identifiable events which establish that the debt will not be paid in the future. Therefore, a taxpayer's subjective opinion that a debt is uncollectible, standing alone, is not sufficient evidence that the debt is worthless. Fox v. Commissioner, 50 T.C. 813, 822 (1968), affd. per curiam per order 25 AFTR 2d 70-891 (9th Cir. 1970). Among the objective factors considered by courts to determine worthlessness are: The debtor's earning capacity; events of default, whether major or minor; insolvency of the debtor; the debtor's refusal to pay; actions of the creditor in pursuing collection, i.e., whether the creditor failed to take collection action prior to claiming the deduction; subsequent dealings between the parties; and lack of assets. American Offshore, Inc. v. Commissioner, supra at 594-595. No single factor is conclusive. Id. at 595.

We conclude that petitioner has failed to meet his burden of proving the worthlessness of the debt during the year in question. Petitioner presented scant evidence concerning Ms. Laumbattus' ability to repay the loan in 1991 and took no legal action in an attempt to collect on the debt. Specifically, petitioner offered no evidence in regard to Ms. Laumbattus' solvency or diminished earning capacity. Furthermore, no promissory note exists from which we could ascertain the nature of Ms. Laumbattus' obligation or petitioner's remedies upon

default. We, therefore, sustain respondent's determination on this issue.

2. Form W-2 Income

During a portion of 1991, petitioner was employed by Strahman Valves, Inc. (Strahman). On his 1991 return, petitioner reported wage income attributable to his employment at Strahman in the amount of $20,694.16. Respondent determined that petitioner was liable for unreported wage income in the amount of $23.20. The parties agree that the amount in question relates to the cost of the portion of employer-provided group term life insurance for coverage in excess of $50,000.

Section 79(a) provides that an employee shall include in his gross income the cost of group term life insurance on his life, provided under a policy carried by his employer, but only to the extent that the cost exceeds the sum of the cost of $50,000 of the insurance plus any amounts paid by the employee toward the purchase of the insurance. Petitioner does not dispute that the $23.20 represents the cost of employer-provided coverage on his life in excess of the cost of $50,000 in coverage. Rather, petitioner argues that because his earned income was less than $50,000 during 1991, the amount in question should not be taxable.

Petitioner has misinterpreted section 79. The $50,000 threshold refers to the employee's coverage amount under a group term life insurance policy, not to the employee's earned income.

As petitioner has offered no other evidence with respect to this issue, we sustain respondent's determination.

3. Casualty Loss

In 1991, petitioner moved from New Jersey to Clearwater, Florida and contracted with East Bergen Moving Co. (East Bergen) to move his personal belongings. A dispute arose between petitioner and East Bergen concerning the amount charged for the move. Petitioner contended that East Bergen had quoted a price of $550, while East Bergen charged petitioner $1,498.89. Petitioner refused to pay the bill, and East Bergen stored the property in Florida with A Atlantic Coast Moving & Storage Co. (A Atlantic), where it had remained up to the date of trial. Petitioner admitted that there was a possibility that he may recover his property. On his 1991 return, petitioner claimed a casualty loss in the amount of $6,500.[6] In his pretrial memorandum, petitioner also refers to the loss as a "theft". Other than the amounts indicated on petitioner's return, there is no evidence in the record concerning his cost basis in the property or its fair market value.

Section 165 provides that individual taxpayers may deduct certain losses, including losses resulting from casualty or theft, sustained during the taxable year and not compensated by

---

[6] Although petitioner reported a casualty loss in the amount of $6,500 on his return, his concession regarding Schedule C income has reduced the amount in dispute to $6,490. See supra note 2.

insurance or otherwise.  Sec. 165(a), (c)(3).  Taxpayers may deduct a casualty loss in the year in which the loss is sustained and may deduct a theft loss in the year in which the loss is discovered.  Sec. 165(a), (c)(3), (e).  If in the year of the occurrence of the casualty, or in the year of the discovery of the theft, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss is deemed sustained by the taxpayer until the taxable year in which it can be ascertained with reasonable certainty whether or not reimbursement will be received.  Marine v. Commissioner, 92 T.C. 958, 980 (1989), affd without published opinion 921 F.2d 280 (9th Cir. 1991); sec. 1.165-1(d)(2)(i), (3), Income Tax Regs.  Whether a reasonable prospect of recovery exists is a question of fact.  Sec. 1.165-1(d)(2)(i), Income Tax Regs.

The amount of a casualty or theft loss is equal to the lesser of (1) the fair market value at the time of the casualty or theft, or (2) the adjusted cost basis of the property in question.  Secs. 1.165-7(b) and 1.165-8(c), Income Tax Regs. Therefore, where a taxpayer fails to establish the cost or other basis of property underlying a claim for a casualty loss deduction, no deduction is allowable.  Zmuda v. Commissioner, 79 T.C. 714, 727 (1982), affd. 731 F.2d 1417 (9th Cir. 1984).

In this instance, petitioner readily admits that A Atlantic is presently holding his property, and that there is a

possibility of recovery.  Therefore, we conclude that there is a reasonable likelihood that petitioner will recover the property in question.  Petitioner has also failed to offer any specific evidence regarding the cost basis or fair market value of the property involved.  For both reasons, petitioner is precluded from claiming a casualty or theft loss with respect to 1991.  We, therefore, sustain respondent's determination on this issue.

4.  <u>Applicability of 10-Percent Penalty to Pension and IRA Distributions</u>

During 1991, petitioner terminated his employment with Strahman, citing concerns for his health.  Upon his termination in 1991, petitioner received a distribution in the amount of $27,080.21 from a pension plan.  Petitioner also received a distribution in the amount of $16,194.32 from an IRA.  Petitioner reported these amounts as income on his return but did not report the 10-percent additional tax as provided by section 72(t).

Section 72(t) generally provides for a 10-percent additional tax on a distribution from a qualified plan, unless the distribution comes within one of the statutory exceptions.  Sec. 72(t)(1) and (2).  At issue here is the exception provided in section 72(t)(2)(A)(iii), pertaining to distributions attributable to an employee's being disabled within the meaning of section 72(m)(7).[7]  Petitioner contends that the 10-percent

---

[7]  For the purposes of sec. 72(t), the term "employee" also refers to participants in individual retirement accounts.  Sec. 72(t)(5)

additional tax does not apply in this instance, because long-term

exposure to asbestos rendered him permanently and totally

disabled during 1991.  Petitioner is a Christian Scientist, and

he argues that his religious beliefs prevent him from receiving

medical attention.

Section 72(m)(7) defines the term "disabled" as follows:

[A]n individual shall be considered to be disabled if
he is unable to engage in any substantial gainful
activity by reason of any medically determinable
physical or mental impairment which can be expected to
result in death or to be of long-continued and
indefinite duration.  An individual shall not be
considered to be disabled unless he furnishes proof of
the existence thereof in such form and manner as the
Secretary may require.

See also sec. 1.72-17A(f)(2), Income Tax Regs.[8]  Petitioner has

offered no medical evidence of his disability, asserting that his

religious beliefs prevented him from seeking the medical

examination necessary to ascertain the extent and gravity of his

---

[8]  With regard to disabilities related to lung disease, sec.
1.72-17A(f)(2), Income Tax Regs., provides:

The following are examples of impairments which would
ordinarily be considered as preventing substantial
gainful activity:

*       *       *       *       *       *       *

(iii)  Diseases of the heart, lungs, or
blood vessels which have resulted in major
loss of heart or lung reserve as evidenced by
X-ray, electrocardiogram, or other objective
findings, so that despite medical treatment
breathlessness, pain, or fatigue is produced
on slight exertion, such as walking several
blocks, using public transportation, or doing
small chores;

condition.  In so doing, petitioner argues that section 72(m) infringes upon his First Amendment right to free exercise of religion, insofar as it would require him to violate his religious beliefs before being accorded the benefits of the exception to the 10-percent additional tax.  We do not doubt the sincerity of petitioner's religious beliefs.  Nevertheless, we have stated:  "The fact that a law with a secular purpose may have the effect of making the observance of some religious beliefs more expensive does not render the statute unconstitutional under the First Amendment."  Black v. Commissioner, 69 T.C. 505, 510 (1977) (citation omitted).

Section 72(m) has the purpose of requiring taxpayers to furnish proof of disability before being entitled to a tax benefit.  See Dwyer v. Commissioner, 106 T.C. 337 (1996).  By choosing not to seek a medical diagnosis for his condition, petitioner fails to qualify for this exception.  We, therefore, sustain respondent's determination on this issue.

5.  Accuracy-Related Penalty Under Section 6662(a)

Respondent determined that petitioner was liable for the accuracy-related penalty for 1991.  The accuracy-related penalty is equal to 20 percent of any portion of underpayment attributable to a taxpayer's negligence or disregard of rules and regulations.  Sec. 6662(a) and (b)(1).  The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and the term

"disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). The penalty does not apply to any portion of an underpayment for which there was reasonable cause and with respect to which the taxpayer acted in good faith. Sec. 6664(c). Generally, the Commissioner's determination imposing the accuracy-related penalty is presumed correct, and taxpayers bear the burden of proving that they are not liable for the accuracy-related penalty imposed by section 6662(a). Rule 142(a); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989).

Petitioner has offered no evidence to indicate that he acted with reasonable cause and good faith with respect to some of the issues discussed herein. Petitioner has failed in his burden to establish that he is not liable for the accuracy-related penalty as it applies to the portion of the deficiency resulting from the disallowed business bad debt deduction, the omitted wage income, and the disallowed casualty loss deduction.

With respect to the portion of the underpayment resulting from the 10-percent addition to tax imposed by section 72(t), we conclude that petitioner is not liable for the negligence penalty. Petitioner reported the distributions from his pension and IRA plans as income on his 1991 Federal income tax return. Petitioner did not report the 10-percent additional tax, believing that he qualified for the disability exception. Although petitioner failed to qualify under the technical provisions of the Internal Revenue Code and the regulations, we

do not believe petitioner acted unreasonably or intentionally disregarded the rules and regulations under these particular circumstances.  Accordingly, we find for petitioner with respect to this portion of the underpayment.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.